Jeffrey N. Costakos (*Pro Hac Vice*)
R. Jan Pirozzolo-Mellowes (*Pro Hac Vice*)
H. Holden Brooks (*Pro Hac Vice*)
Michelle A. Moran (*Pro Hac Vice*)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
jcostakos@foley.com
jpirozzolo-mellowes@foley.com
hbrooks@foley.com
mmoran@foley.com

Michael D. Johnston (11273)
KIRTON & McCONKIE
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
mjohnston@kmclaw.com

*Attorneys for Defendant Smiths Medical ASD, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| C. R. BARD, INC., a New Jersey corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, | ) ) ) ) | Case No. 2:12-cv-00036-RJS-DAO |
| Plaintiffs, | ) ) ) ) | **SMITHS MEDICAL ASD, INC.'S RENEWED MOTION TO TRANSFER VENUE** |
| v. | ) ) ) | Judge Robert J. Shelby |
| SMITHS MEDICAL ASD, INC., a Delaware corporation, | ) ) ) | Magistrate Judge Daphne A. Oberg |
| Defendant. | ) ) | REDACTED - FILED UNDER SEAL |

# TABLE OF CONTENTS

I. RELIEF SOUGHT AND GROUNDS FOR SMITHS MEDICAL'S RENEWED MOTION ................................................................................................ 1

II. INTRODUCTION ...................................................................................... 1

III. SMITHS MEDICAL HAS NO REGULAR AND ESTABLISHED PLACE OF BUSINESS IN UTAH ................................................................................. 2

    A. Smiths Medical Has No Physical Place in the District ........................... 3

        1. Employee home offices in the District are not a physical place of Smiths Medical. ................................................................. 4

        2. A third party storage unit in the District is not a physical place of Smiths Medical. ................................................................. 7

    B. Smiths Medical Has No Regular and Established Place of Business in the District ......................................................................................... 9

    C. There Is No Place of Smiths Medical in the District ........................... 11

        1. Employees' home offices are not a place of Smiths Medical ................... 12

            i. Smiths Medical did not own or control employees' homes .......... 12

            ii. Smiths Medical did not condition employment on living in Utah ................................................................. 12

            iii. Smiths Medical did not require employees to store or distribute from home offices ....................................... 13

            iv. Smiths Medical did not hold out employees' home offices as a place of business. ................................................. 14

            v. Smiths Medical did not engage in business at employees' home offices ................................................. 14

        2. The storage unit is not a place of Smiths Medical. ................... 15

        3. Neither home offices nor the storage unit in the District were critical to Smiths Medical's business ........................... 16

    D. Bard Cannot Meet Its Burden In View of the Facts ........................... 18

        1. Bard's reliance on *RegenLab* is misplaced. ........................... 18

i

    2.    Other case law previously relied on by Bard is inapposite. ...................... 20

    E.    The Filing Date in 2012 Is the Operative Date for Analyzing Venue ................. 21

IV.    MINNESOTA IS THE APPROPRIATE VENUE UNDER § 1406(a) ............................ 23

V.    CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., In*c.,
  No. 13-CV-5669 (NSR), 2018 U.S. Dist. LEXIS 87999 (S.D.N.Y. May 24,
  2018) (unpublished) ..................................................................................................21

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)...................................................................... *passim*

*Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc*.,
  618 F.3d 1153 (10th Cir. 2010) ...............................................................................23

*Free-Flow Packaging Int'l v. Automated Packaging Sys.*,
  No. 17-cv-01803-SK, 2017 U.S. Dist. LEXIS 156997 (N.D. Cal. Aug. 29,
  2017) (unpublished) ....................................................................................... *passim*

*Genuine Enabling Tech., LLC v. Nintendo Co., Ltd.*,
  369 F. Supp. 3d 590 (D. Del. 2019)..........................................................................23

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd*.,
  402 F. Supp. 3d 450 (N.D. Ill. 2019) ......................................................................22

*Neonatal Prod. Grp., Inc. v. Shields*,
  Case No. 13-2601-DDC-KGS, 2017 U.S. Dist. LEXIS 113568 (D. Kan. 2017)
  (unpublished) ...............................................................................................................6

*Niazi v. St. Jude Med. S.C., Inc.*, Case Nos. 17-cv-183-jdp, 17-cv-184-jdp, 17-cv-
  185-jdp, 17-cv-283-jdp, 2017 U.S. Dist. LEXIS 183849, at *7-11 (E.D. Wis.
  Nov. 7, 2017) (unpublished) ....................................................................................18

*ParkerVision, Inc. v. Apple, Inc.*,
  No. 3:15-CV-1477-J-39JRK, 2018 U.S. Dist. LEXIS 225126 (M.D. Fla. Mar.
  8, 2018) (unpublished) .............................................................................................22

*Pers. Audio, LLC v. Google, Inc*.,
  280 F. Supp. 3d 922 (E.D. Tex. 2017).................................................................21, 22

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*.,
  No. 1:13-CV-645, U.S. Dist. LEXIS 184153 (M.D.N.C. Nov. 7, 2017)
  (unpublished) ................................................................................................12, 14, 18

*RegenLab USA LLC v. Estar Techs. Ltd.*,
  335 F. Supp. 3d 526 (S.D.N.Y. 2018).................................................................18, 19, 20

iii

*Regents of Univ. of Minn. v. Gilead Scis., Inc.*
   299 F. Supp. 3d 1034 (D. Minn. 2017) ........................................................... *passim*

*Rensselaer Polytechnic Inst. v. Amazon.com, Inc.,*
   No. 1:18-cv-00549, 2019 U.S. Dist. LEXIS 136436 (N.D.N.Y. Aug. 7, 2019)
   (unpublished) ...........................................................................................20

*Seven Networks, LLC v. Google LLC,*
   315 F. Supp. 3d 933 (E.D. Tex. 2018) ...............................................................21

*Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc.,*
   No. 17-CV-147(KAM)(CLP), 2020 U.S. Dist. LEXIS 61122 (E.D.N.Y. Apr.
   7, 2020) (unpublished) ..............................................................................22

*Zaxcom, Inc. v. Lectrosonics, Inc.,*
   No. 17CV3408NGGSJB, 2019 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 1,
   2019) (unpublished) ...............................................................13, 14, 15, 18

*In re ZTE (USA), Inc.,*
   890 F.3d 1008, 1013 (Fed. Cir. 2018) ................................................................18

**Federal Statutes**

28 U.S.C.
   § 1391(c) ......................................................................................................2
   § 1400(b) ............................................................................................. *passim*
   § 1406 ..........................................................................................................1

Fed. R. Civ. P. 12(b)(3) ....................................................................................1

## I.  RELIEF SOUGHT AND GROUNDS FOR SMITHS MEDICAL'S RENEWED MOTION

Defendant Smiths Medical ASD, Inc. ("Smiths Medical") respectfully moves the Court in this Renewed Motion, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406, to transfer venue to the District of Minnesota because venue is not proper in the District of Utah under 28 U.S.C. § 1400(b).

## II.  INTRODUCTION

Bard's only argument for venue remains (as previously) that Smiths Medical has a regular and established place of business in Utah, for purposes of 28 U.S.C. § 1400(b), because: (1) two of Smiths Medical's sales representatives sometimes worked from their homes in Utah and (2) sales representatives who covered Utah in 2012 had available to them an unmarked 10' x 20' storage locker located in Murray, Utah.  However, neither the home offices nor the storage unit comes close to being a regular and established place of business of Smiths Medical.  Since at least the 2012 timeframe relevant to this motion, Smiths Medical *has never*:

- owned, leased, or controlled any property in Utah;

- required or necessitated that any of its sales representatives live in Utah;

- paid for any portion of its sales representatives' homes in Utah;

- identified or held out to the public either the home offices in Utah or the storage unit in Utah as a place of business of Smiths Medical;

- had a practice of engaging in business transactions with customers from home offices or the storage unit in Utah;  or

- used home offices or the storage unit in Utah as a place to store, sell, and distribute product.

1

Indeed, all that exists here are two sales representatives (of 16) covering Utah for Smiths Medical who chose to live in Utah, and a storage unit, available for convenience, reimbursed to a sales representative. This is insufficient to establish venue in this District, and to conclude otherwise renders the regular and established place of business prong of 28 U.S.C. § 1400(b) meaningless. Indeed, if venue exists for Bard's claims against Smiths Medical in this District, then every business is subject to venue in any District where an employee is working from home.[1] Neither the facts nor the law support such an approach, and despite venue discovery, Bard still cannot meet its burden to show that venue in this District is proper. Accordingly, Smiths Medical's Renewed Motion to Transfer Venue to Minnesota should be granted.[2]

## III.   SMITHS MEDICAL HAS NO REGULAR AND ESTABLISHED PLACE OF BUSINESS IN UTAH

Venue in patent infringement cases is proper only in the judicial district (1) "where the defendant resides," or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The parties do not dispute that Smiths Medical does not reside in this District. (*See* Dkt. No. 157 at 4; Dkt. No. 160 at 14.)

The crux of the dispute revolves around the second condition – whether Smiths Medical has "a regular and established place of business" in Utah. A defendant has a "regular and established place of business" when three requirements are met: (1) the defendant has a

---

[1] As explained by the Federal Circuit in discussing the venue statute, "[c]ourts should be mindful of [the] history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases. As the district court correctly stated, 'the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c).'" *In re Cray Inc.,* 871 F.3d 1355, 1361 (Fed. Cir. 2017).

[2] On March 3, 2020, the Court denied Smiths Medical's Motion to Transfer for Improper Venue without prejudice to refile, and granted in part Bard's Motion for Venue Discovery. (Dkt. No. 168.)

"physical, geographical location in the district," (2) that is a regular and established place of business, which is (3) the place "of the defendant."  *See Cray*, 871 F.3d at 1362-63.  Although venue discovery resulted, for example, in more detail about the underlying facts at issue here, such as the identification by name of the sales representatives who serviced Utah or the actual dimensions and location of the Utah storage unit, the underlying facts are the same as previously presented, and there remain no facts to show that Smiths Medical meets **any** of the three requirements, never-mind all three requirements necessary to establish venue under § 1400(b). Having not met either prong of § 1400(b), this District is not a proper venue for Bard's patent infringement claims against Smiths Medical.

### A.   Smiths Medical Has No Physical Place in the District

"[A] 'physical, geographical location in the district' is required to establish the first venue element under [the second] prong of § 1400(b)."  *Regents of Univ. of Minn. v. Gilead Scis.*, *Inc.* 299 F. Supp. 3d 1034, 1041 (D. Minn. 2017).

Since at least as early as January 2012, Smiths Medical has not owned, entered into any leases, controlled, or occupied any real property in Utah.  (Dkt. No. 157-1, De Leon Decl. at ¶ 9; *see also Free-Flow Packaging Int'l v. Automated Packaging Sys.*, No. 17-cv-01803-SK, 2017 U.S. Dist. LEXIS 156997, at *2 (N.D. Cal. Aug. 29, 2017) (unpublished) (no venue where no ownership or lease of office or manufacturing or shipping facilities)[3]; *Univ. of Minn.*, 299 F. Supp. 3d at 1039, 1041 (no physical place of defendant where no offices, warehouses, manufacturing plants, research and development centers, or laboratories).).  In particular, Smiths Medical neither owned, leased, controlled, or occupied any portion of any employee's residence, nor did Smiths Medical participate in selecting any employee's residence in Utah.  (Dkt. No.

---

[3] While *Free-Flow* was decided prior to *Cray*, the *Free-Flow* Court relied on *In re Cordis* like the Court in *Cray*, followed the same analysis, and the case remains good law today.  *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *12-14, 18-22.

157-1, De Leon Decl. at ¶ 10.)  Likewise, Smiths Medical did not own, control, or occupy the

Utah storage unit.  Nor was Smiths Medical the lessor of the storage unit from the third-party

company, CubeSmart (formerly U-Store-It). (Ex. F, Deposition Transcript of Robert De Leon

("De Leon Tr.") at 127:25-129:8.)  At most, Smiths Medical reimbursed the expense for the lease

that its sales representative entered; however, reimbursement such as this is insufficient to

provide a basis for venue.  *See Univ. of Minn.*, 299 F. Supp. 3d at 1043 (even when storage

lockers leased directly by defendant through third party there is no basis for regular and

established place of business).  While Smiths Medical has facilities in, for example, Minnesota,

Ohio, New Hampshire, and Connecticut, happenstance home offices of two sales representatives

and an unmarked storage unit in this District, none of which Smiths Medical selected, controlled

or maintained, is a far cry from satisfying the physical location requirement of § 1400(b).  (Dkt.

No. 157-1, De Leon Decl. at ¶¶ 5-7, 9, 10, 12; Ex. A, Supplemental Interrogatory Responses

("Supp. Resp.") at 3-4 (Rog. No. 1, identifying sales representatives).)

### 1. Employee home offices in the District are not a physical place of Smiths Medical.

In the 2012 timeframe, Smiths Medical's presence in Utah was (and remained) limited to

the occasional activity of 16 sales representatives, 14 of whom periodically came to Utah from

their homes in other states, and only a mere two of whom lived in Utah and serviced customers

throughout the entire multi-state territory.[4]  (Dkt. No. 157-1, De Leon Decl. at ¶ 10; Ex. A. Supp.

Resp. at 3-4 (Rog. No. 1, identifying sales representatives).)  Notably, this District is only a

portion of the geographic region for which these employees were responsible, and as is typical,

Smiths Medical assigned these sales representatives to other states in addition to Utah, including

for example, Colorado, Wyoming, Nevada, and Arizona.  (Dkt. No. 157-1, De Leon Decl. at ¶

---

[4] Only one (1) of these sales representatives was involved with the products at issue in this case.

10; Ex. A, Supp. Resp. at 3-4 (Rog. No. 1, identifying sales representatives); Exs. B-E (sales directories, showing representatives' sales territories); *see also Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *2-3, 18-19 (no physical place of defendant where portion of sales representative territory).)

None of the 16 sales representatives covering Utah in 2012 worked from any physical Smiths Medical office in Utah (and none existed), nor did Smiths Medical provide any administrative support to sales representatives from any location in Utah.  (Dkt. No. 157-1, De Leon Decl. at ¶¶ 9-12); *Univ. of Minn.*, 299 F. Supp. 3d at 1041-42 (no physical place of defendant where no administrative support); *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *3 (same.  In fact, any administrative support would have come from the corporate headquarters in Minnesota, a Shared Services Center in Dublin, Ohio, or, for product specific support, one of Smiths Medical's other facilities located in Keene, NH or Southington, CT. (Dkt. No. 157-1, De Leon Decl. at ¶ 12.)

Instead, when in Utah, these sales representatives worked "in the field," meaning they visited customers at *their* places of business, e.g., hospitals and surgery centers.  (*Id.* at 11; Ex. F, De Leon Tr. at 16:4-17:5; 136:2-16); *Univ. of Minn.*, 299 F. Supp. 3d at 1038, 1041 (no physical place of defendant where no work from physical location, but in the field).  When not working "in the field," these sales representatives worked from hotels, cars, and home offices that, with the exception of two solitary sales employees, were outside this District and in states such as Colorado and Arizona.[5]  (Dkt. No. 157-1 at ¶¶ 10-12); *Univ. of Minn.*, 299 F. Supp. 3d at 1038, 1041 (no physical place of defendant where "'[M]ost of work is done from a clinic or from a car

---

[5] Typically sales representatives worked one to two days a week on administrative tasks in their home offices, e.g., preparing expense reports, conducting internal calls, analyzing business opportunities, etc.  (Ex. A, Supp. Resp. at 10 (Rog. No. 4); *see* Sec. III.C.3.v.

or from a hotel.'").

(Ex. F, De Leon Tr. at 34:3-23.)

Smiths Medical acknowledges that sales representatives likely had

(Ex. De Leon Tr. at 80:5-82:2, 138:5-141:15

(                                                                                                        ).)

But significantly, Smiths Medical did not use its employees' homes to store promotional material, products, inventory, or as distribution centers.  (Dkt. No. 157-1, De Leon Decl. at ¶ 10; *Univ. of Minn.*, 299 F. Supp. 3d at 1041 (no physical place of defendant where no products for sale and only limited literature stored in employee homes); *Automated Packaging,* 2018 U.S. Dist. LEXIS 5910, at *21 (citation omitted) (where some employees kept "a limited amount of product in their home for demonstrative purposes" finding "'this relatively limited practice does not provide sufficient support for a finding that these homes constitute [defendant's] physical place'" in the District.).)

Nor did Smiths Medical hold out its employees' homes as a place of business.  (Dkt. No. 157-1 at ¶ 10.)  That a sales representative resides at a place is of no moment.  *Cray,* 871 F.3d at 1365.  Venue is proper where the defendant has a regular and established place of business, not merely where Smiths Medical's employee owns a home and happens to carry on some work for Smiths Medical.  *See id.* (explaining of no moment that employee owns home and carries on some work there); *see also Neonatal Prod. Grp., Inc. v. Shields*, Case No. 13-2601-DDC-KGS, 2017 U.S. Dist. LEXIS 113568, at *4-6 (D. Kan. 2017) (unpublished) (differentiating the regular and established place of business test for venue from the doing business test).

### 2.    A third party storage unit in the District is not a physical place of Smiths Medical.

Nor is the individualized transitory use of a storage unit by any sales representatives sufficient to create a regular and established place of business.  In the 2012 timeframe Smiths Medical's sales representatives assigned to Utah had access to an unmarked, shared 10' x 20' storage unit in Murray, Utah leased by a sales representative, the cost of which was reimbursed by Smiths Medical.  (Dkt. No. 157-1, De Leon Decl. at ¶ 15; Ex. A, Supp. Resp. at 12 (Rog. No. 5).)  The storage unit would have been used to store supplies such as product samples, marketing literature, or samples of heavier pieces of capital equipment (e.g., Smiths Medical's Level 1 portfolio of products such as fluid warmers, rapid infusors, blanket warmers; Smiths Medical's Pnuepac line of products such as transport ventilators; Smiths Medical's BCI products such as capnography monitoring equipment; and potentially Smiths Medical's CADD or Medfusion infusion pumps), which would then be transported via the company issued vehicles by the sales representatives for use during customer presentations and demonstrations, within either acute or non-acute customer facilities.  (Dkt. No. 157-1, De Leon Decl. at ¶ 15; Ex. A, Supp. Resp. at 12 (Rog. No. 5).)

But an unmarked storage unit, such as the one at issue here, is hardly a "place" of Smiths Medical; no one in the public could possibly have known it was connected in any way with Smiths Medical.  (Ex. F, De Leon Tr. at 127:25-128:8; Dkt. No. 157-1 at ¶ 15.)  And courts have explained that, even if the cost of the storage unit was reimbursed, "[t]hese expenditures are not intentional actions directed at establishing a regular and established place of business in the District." *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *4-5, 19.  Indeed, Smiths Medical's lack of control and management over these units, which ultimately led to their shutdown, reinforces that the renting of such a unit by a sales representative was not an

intentional action of Smiths Medical directed at establishing a regular and established place of business in Utah.  (Ex. F, De Leon Tr. at 21:2-27:5); *see infra* Sections III.C.2, III.C.3.

As explained above, sales representatives at Smiths Medical are expected to operate "in the field" and to visit customers in person at the customers' locations.  (Ex. F, De Leon Tr. at 16:4-17:5.)  The storage unit was merely a place to store material, including samples of large pieces of heavy capital equipment so that, for example from a safety perspective, sales representatives did not have to drive from places such as Colorado or Arizona to Utah with them in the car.  (Ex. F, De Leon Tr. at 140:20-141:22.)  In so far as the storage unit was used, the equipment kept there would be picked up and taken to a customer facility for a presentation or demonstration.  (*Id*.)  Sales representatives did not conduct or transact business at the storage unit.  (Dkt. 157-1 at ¶ 15.)

(Ex. F, De Leon Tr. at 141:23-143:23.)  A mere storage unit where no business is transacted, no inventory is stored, from which no products are distributed, and lacking any signage associating it with Smiths Medical is insufficient to support a finding that the storage unit was a regular and established place of business of Smiths Medical.  *See infra* Section III.C.2.

Venue discovery reinforced this and confirmed that use of the storage unit was unmanaged and haphazard at best.  The eventual shutdown of the storage unit in 2014 and the circumstances surrounding the shutdown, confirm that the Utah storage unit was not a part of any plan by Smiths Medical to maintain a regular and established place of business in this District.  Rather, it was a mere tool of convenience set up and managed by the sales representatives, fundamentally no different from their sales bag.  (Dkt. No. 157-1 at ¶ 15.)

In the end, these facts show that the home offices of the two sales representatives and the storage unit were incidental to the activities of Smiths Medical's sales representatives merely doing business in the District.  *See infra* Sections III.C.1, III.C.2.  Where Smiths Medical exercised no control over the sales representatives' home offices or the Utah storage unit, neither can provide a basis for concluding that Smiths Medical has a physical presence in this District. That Smiths Medical did not have a physical presence is, taken alone, sufficient to establish venue in Utah is improper under § 1400(b).

## B.    Smiths Medical Has No Regular and Established Place of Business in the District

The second element for venue under the second prong of § 1400(b) requires that Smiths Medical's physical place of business in this District (of which there is none) be "regular and established."  *See Univ. of Minn.*, 299 F. Supp. 3d at 1042-43.  "A 'regular' business is one that operates in a 'steady, uniform, orderly, and methodical' manner, or, in other words, is non-sporadic," and "an 'established' place is one that is 'settled certainly, or fixed permanently.'"  *Id.* at 1042.

While Smiths Medical employed sales representatives assigned to Utah (Dkt. No. 157-1, De Leon Decl. at ¶¶ 9-10; Ex. A, Supp. Resp. at 3-4 (Rog. No. 1)), their activities in Utah were not "steady" or "uniform" and "the physical location of the sales force is not permanently fixed." *Univ. of Minn.*, 299 F. Supp. 3d at 1042.

(Ex. A, Supp. Resp. at 10 (Rog. No. 4); Ex. F, De Leon Tr. at 136:2-16; 170:2-23.)  Such sporadic activity in the District is inconsistent with the notion that Smiths Medical operates a steady, uniform, orderly or methodical business through its sales representatives, which is necessary for Smiths Medical to have a regular and established place of business in Utah under § 1400(b).

The Federal Circuit has said "if an employee can move his or her home out of the district at his or her own instigation" without the approval of Smiths Medical, "that would cut against the employee's home being considered a place of business of the defendant." *Cray*, 871 F.3d at 1363.  Accordingly, an ability to move one's residence is inconsistent with the notion that a home office is "permanently fixed" within the District. *Id.; Univ. of Minn.*, 299 F. Supp. 3d at 1042 (no regular and established place of business where employees were not required to live in the district).  Such is the case for Smiths Medical's sales representatives who are not required to live in Utah, but rather can live anywhere within the territory that they service.  (Dkt. No. 157-1, De Leon Decl. at ¶ 10; Ex. A, Supp. Resp. at 8 (Rog No. 3); Ex. F De Leon Tr. at 58:15-59:18; 166:7-19); Exs. B-E (sales directories)); *Automated Packaging,* 2018 U.S. Dist. LEXIS 5910, at *23 (no regular and established place of business where no requirement to live in the judicial district, and that "such a requirement would be inconsistent with the fact that their sales territory covers a number of states."); *Univ. of Minn.*, 299 F. Supp. 3d at 1042 (same).

Here, of the 16 sales representatives covering Utah in 2012, none were required to live in Utah, and 14 *did not* live in Utah.  (Dkt. No. 157-1, De Leon Decl. at ¶ 10; Ex. A, Supp. Resp. at 3-4 (Rog. No. 1), 8 (Rog No. 3).)  Notably, from 2012 through the present, Utah has never been a single state territory such that a sales representative assigned to the territory would necessarily live in Utah, and at no time has a sales representative covering Utah as part of his or her territory been required to live in Utah.  (*Id.* at 8 (Rog. No. 3); Dkt. No. 157-1 at ¶ 10.)

(Ex.  F,  De  Leon  Tr.  at  137:13-138:4;  166:7-19.)

(Ex. F, De Leon Tr. at 136:17-138:4.)

Nor was the Utah storage unit part of any uniform, methodical, and regular program. *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *19 (reimbursements of storage unit are only "expenditures to support employees" and are "not intentional actions directed at establishing a regular and established place of business in the District.")   In fact, Smiths Medical did not control the use or contents of the storage unit, and the lack of visibility and inconsistent use ultimately was a significant reason for the company-wide shutdown of storage units.  (Ex. F, De Leon Tr. at 21:6-22:24; 24:21-25:11; Dkt. No. 157-1, De Leon Decl. at ¶ 15.)  As such, the Utah storage unit could hardly be characterized as "an 'established' place . . . 'settled certainly, or fixed permanently.'"  *Univ. of Minn.*, 299 F. Supp. 3d at 1042.

 These factors weigh against finding that Smiths Medical has a "regular and established" presence in this District.

### C.      There Is No Place of Smiths Medical in the District

The third element for venue under the second prong of § 1400(b) requires that Smiths Medical's regular and established place of business (which as shown above is not satisfied) be "'a place *of the defendant*, not solely a place of the defendant's employee.'"  *Cray*, 871 F.3d at 1363 (emphasis in original).  Relevant considerations include "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place . . . whether the defendant conditioned employment on the employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place . . . whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself" and that "the defendant must actually engage in business from that location."  *Id*. at 1363-1364.

1.       **Employees' home offices are not a place of Smiths Medical**

    i.       **Smiths Medical did not own or control employees' homes.**

As previously explained, Smiths Medical does not own, possess or control its employees' homes or participate in selection of its employees' homes.  (Dkt. No. 157-1 at ¶ 9); *Univ. of Minn.*, 299 F. Supp. 3d at 1043 (no place of defendant where no ownership or participation in selection of employees' homes in the district).  Though Smiths Medical reimbursed home-based employees for such things as home phone lines, internet service, small consumable office items (e.g., mouse, cable, printer cartridges, headsets, batteries, scanners, etc.) and cell phones, Smiths Medical did not pay for or provide any allowance for an employee's home or other capital expenditures associated with a home office.  (Dkt. No. 157-1, De Leon Decl. at ¶ 14; Ex. G (reimbursement policy)); *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *7, 19 (no physical place of defendant where employee expenses were reimbursed).

(Ex. F, De Leon Tr. at 104:12-106:2) sufficient to establish or ratify a place of business—here a home office—in Utah.  *See Univ. of Minn.*, 299 F. Supp. 3d at 1043-44 (providing computers and reimbursing expenses to sales representatives insufficient for place of the defendant); *Automated Packaging,* 2018 U.S. Dist. LEXIS 5910, at *26 (providing laptops, electronic devices, as well as other supplies insufficient to meet the venue requirement).

    ii.       **Smiths Medical did not condition employment on living in Utah.**

Smiths Medical did not require or condition employment and/or reimbursement for home office consumable-type expenses on living in this District.  (Dkt. No. 157-1 at ¶ 10; Ex. F, De Leon Tr. at 58:15-59:18; Ex. A, Supp. Resp. at 8 (Rog. No. 3); *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*., No. 1:13-CV-645, U.S. Dist. LEXIS 184153, at *29 (M.D.N.C. Nov. 7, 2017)

(unpublished) (no place of the defendant where "there is no evidence that [defendant] ever conditioned [] employment on [] residence in the district or played any role in selecting its location.   None of the reimbursement or support received [] was conditioned on his location here."); *Automated Packaging,* 2018 U.S. Dist. LEXIS 5910, at *24 (same); *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17CV3408NGGSJB, 2019 U.S. Dist. LEXIS 16975, at *15 (E.D.N.Y. Feb. 1, 2019) (unpublished) (same); *Univ. of Minn.*, 299 F. Supp. 3d at 1044 (same).

> ### iii.   Smiths Medical did not require employees to store or distribute from home offices.

(Ex. I (sales tool); Ex. F, De Leon Tr. at 68:8-70:3, 81:12-83:9; *Univ. of Minn.*, 299 F. Supp. 3d at 1044 (employees not required to store materials in home offices).

(Ex. F De Leon Tr. at 81:18-82:22 (

)); *Automated Packaging*, 2018 U.S. Dist. LEXIS 5910, at *24 (no place of the defendant where "small amounts of product are maintained in [employees homes], [but the] product is not available for direct sale to customers"); *Univ. of Minn.*, 299 F. Supp. 3d at 1044 (same).[6]

Regardless, even assuming the two Utah-based sales representatives kept material in their homes, maintaining a small quantity of product samples or promotional material in a home office

---

[6] Nor is there any evidence that Smiths Medical's sales representatives "swap out" product samples to replace defective products.   *Zaxcom,* 2019 U.S. Dist. LEXIS 16975, at *17-18 (finding that the inventory kept at employee's home may count slightly in favor of venue because the employee would on occasion use the demonstration products to swap out defective products already sold to customers).

is insufficient to find venue. *Precision Fabrics,* 2017 U.S. Dist. LEXIS 184153, at *30 ("The mere fact that [the employee] maintained '[s]mall sample swatches' of fabric and literature at his home is insufficient to establish venue."); *Univ. of Minn.*, 299 F. Supp. 3d at 1044 (no place of the defendant even where some employees maintained literature in their homes).

### iv.   Smiths Medical did not hold out employees' home offices as a place of business.

Nor does Smiths Medical hold out any of its employees' homes as a place of business on, for example, a website or directory.  (De Leon Decl. at ¶ 10); *Univ. of Minn.*, 299 F. Supp. 3d at 1044-1045.  The business cards for these employees did not include their home address, but instead provided the address for Smiths Medical's Shared Services Center located in Dublin, Ohio, as well as the telephone number for that Center and a business cell phone number issued by Smiths Medical.  (Dkt. No. 157-1, De Leon Decl. at ¶ 13; Ex. H (Business card form).)

Though Smiths Medical issued cell phones to its sales representatives with phone numbers local to where they lived (Ex. F, De Leon Tr. at 110:2-112:2), the listing of such phone numbers on business cards is insufficient to establish a home office as a physical place of the defendant in the district.  *See e.g., Cray,* 871 F.3d at 1365-66 (sales representative's "social media profiles and phone number indicate at most that he conducted business from [the district], not that [the defendant] established a place of business there); *Precision Fabrics,* 2017 U.S. Dist. LEXIS 184153, at *30 (listing local address and phone number "indicates little beyond the fact that he conducted business in the district"); *Zaxcom,* 2019 U.S. Dist. LEXIS 16975, at *19 (same).

### v.   Smiths Medical did not engage in business at employees' home offices.

There is no evidence that Smiths Medical engaged in business at any Utah-based employees' home office.  *Cray*, 871 F.3d at 1364.  Rather, as explained above, Smiths Medical's

sales representatives went to customers' places of business, e.g., hospitals and surgery centers, and when not working "in the field," they worked from hotels, cars, and home offices that for most were outside this District and in states such as Colorado and Arizona.  (Dkt. No. 157-1 at ¶¶ 11-12; Ex. F, De Leon Tr. at 16:4-17:5; 136:2-16); *Zaxcom,* 2019 U.S. Dist. LEXIS 16975, at *22 (no place of the defendant where the business model indicates the company maintains staff at a headquarters and "regional sales employees 'who travel from their homes to promote [Defendant's] products to dealers and their customers in their [respective] territories.'").

To the extent orders for products were placed, such orders were not typically placed by a sales representative, but rather placed by the customer directly through the Shared Services Center in Dublin, Ohio via telephone, electronically via electronic data interchange ("EDI"), or via facsimile.  (Dkt. No. 157-1, De Leon Decl. at ¶ 11; Ex. F, De Leon Tr. at 181:6-182:10.) Smiths Medical's portfolio of products are in large part consumable-type products that healthcare systems or acute and non-acute care facilities order directly from Smiths Medical or a prime distributor.  (Ex. F, De Leon Tr. at 181:6-182:10.)  In the unlikely event a sales representative did place an order, it would have been placed through the Dublin, Ohio Shared Services Center. (Dkt. No. 157-1, De Leon Decl. at ¶ 11); *Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *3 (no physical place of defendant where orders placed through location outside district).  For the two Utah-based sales representatives in 2012, home office activities were administrative in nature, e.g., preparing expense reports; discussions with account managers; telephone calls with Smiths Medical's management team, internal marketing team, and finance teams; scheduling with customers.  (Ex. A Supp. Resp. at 10 (Rog. No. 4).)

### 2.      The storage unit is not a place of Smiths Medical.

Likewise, access to a shared storage unit is insufficient to constitute "a sufficiently regular and established foothold," of the defendant in the district.  *Univ. of Minn.*, 299 F. Supp.

3d at 1043; *see also Free-Flow Packaging*, 2017 U.S. Dist. LEXIS 156997, at *4-5, 19 (same). As with home offices, Smiths Medical did not own, control or lease the storage unit.  (Dkt. No. 157-1, De Leon Decl. at ¶¶ 9, 15; Ex. F, De Leon Tr. at 25:12-16; Ex. A, Supp. Resp. at 12 (Rog. No. 5).)   Rather, the unit was leased by a sales representative who was reimbursed for the expense by Smiths Medical without Smiths Medical exercising management or control over the unit.  (Dkt. No. 157-1 at ¶ 15; Ex. F, De Leon Tr. at 25:12-16; 113:19-24; 127:4-11; Ex. A, Supp. Resp. at 12 (Rog. No. 5)); *Univ. of Minn.*, 299 F. Supp. 3d at 1043 (no control or ownership).  Smiths Medical did not manage the contents of the storage unit or direct sales representatives as to what to store there.  (Ex. F, De Leon Tr. at 21:25-22:24); *Univ. of Minn.*, 299 F. Supp. 3d at 1044 (no direction to store products or materials).  Additionally, the storage unit was not held out to the public as a place of business.  (Dkt. No. 157-1 at 15.)  It was located in a third-party storage facility with no signage and not listed on any website or directory.  (*Id.*; Ex. F, De Leon Tr. at 128:2-129:7); *Cray*, 871 F.3d at 1363-64 (signage is relevant to whether there is a place of business.)  Finally, the storage unit was just that—a place to store material. (Dkt. No. 157-1 at ¶ 15; Ex. A, Supp. Resp. at 12 (Rog. No. 5); Ex. F, De Leon Tr. at 22:15-23). Sales representatives did not conduct meetings or transactions with customers at the storage unit. (Dkt. No. 157-1 at ¶ 15); *Cray,* 871 F.3d at 1364 ("defendant must actually engage in business from that location.").

### 3.   Neither home offices nor the storage unit in the District were critical to Smiths Medical's business.

Altogether, the facts are insufficient to support a finding that the home offices or the Utah storage unit were a place of Smiths Medical.  Tellingly, as the facts above demonstrate, Smiths Medical did not consider its Utah employees' home offices or the storage unit, to be critical to Smiths Medical's business.  As explained, Smiths Medical did not require residence in Utah by

its sales representatives covering the District, and in fact, most representatives covering Utah lived in other states.  (Ex. A, Supp. Resp. at 3-4, 8 (Rog. Nos. 1, 3); Dkt. No. 157-1 at ¶ 10.) Notably, with respect to the two sales representatives with home offices, one left Smiths Medical in 2014, and the other left in 2019.  (Ex. A, Supp. Resp. at 5 (Rog. No. 1).)  Since the 2019 departure, of the thousands of Smiths Medical's employees, not one resides in Utah.  (Dkt. 164-1 at ¶ 3; Ex. E at 1.)  Smiths Medical did not pay for any portion of a sale representatives' Utah residence or participate in its selection.  (Dkt. No. 157-1 at ¶ 10.)  Smiths Medical did not include any Utah-specific contact information other than the individual representative's phone number, if that representative was in Utah.  (Ex. F, De Leon Tr. at 110:23-112:2; Ex. H (business card form).)  Likewise, Smiths Medical did not use the storage unit as a toe-hold in the District, held out to the public as a place from which it operated its business.  Smiths Medical stopped reimbursing for the non-mandatory storage units and stopped the practice of using them altogether, including in Utah, by 2014.  (Dkt. No. 15-1 at ¶ 15; Ex. A, Supp. Resp. at 12 (Rog. No. 5); Ex. F. De Leon Tr. at 21:6-27:5.)  At bottom, a permanent physical presence in Utah was not integral to Smiths Medical's business model.  This lack of importance weighs in favor of finding that venue is not proper in this District.  *Cray,* 871 F.3d at 1364-65 (finding home offices were not places "of the defendant" because, in part, "[n]o evidence show[ed] that [the defendant] believed a location within the [district] to be important to the business performed, or that it had any intention to maintain some place of business in that district in the event [the employees] decided to terminate their residences as a place where they conducted business").

Accordingly, there is no evidence of a physical place held out or ratified by Smiths Medical as a place of business, in this District.

17

### D.   Bard Cannot Meet Its Burden In View of the Facts

Bard's original opposition to Smiths Medical's Motion to transfer advanced legal theories based on a handful of cases (Dkt. No. 160), none of which were applicable to Smiths Medical's facts. (Dkt. No. 164 at 1-6.)  Now, after venue discovery, it is even more apparent that the facts in this case do not support venue and Bard cannot meet its burden.  *See In re ZTE (USA) Inc*., 890 F.3d 1008, 1013 (Fed. Cir. 2018) (stating "[A]s a matter of Federal Circuit law . . . upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue.").

### 1.   Bard's reliance on *RegenLab* is misplaced.

Hoping to find a toe-hold for venue in Utah, Bard has repeatedly cited *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526 (S.D.N.Y. 2018) as support, but *RegenLab* is a rare decision decided since *Cray*.  While the Court in *RegenLab* found employee home offices to be a place of the defendant for purposes of establishing venue, the circumstances of this case are quite different from the facts that led to the Court's decision in *RegenLab*.[7]

Significantly, in *RegenLab*, the court found the home offices were a "physical place in the district" explaining that because "all Eclipse employees work from home, home offices constitute a primary physical location for Eclipse's business." *RegenLab*, 335 F. Supp. 3d at 549 (citing *Cra*y, 871 F.3d at 1363 n.l (noting that "a defendant [may have] a business model whereby many employees' homes are used by the business as a place of business of the defendant.")).  Smiths Medical does not have all employees work from home, and it expects its

---

[7] Including *Cray* and subsequent decisions courts have found an employee home office is not sufficient to support venue. *See, e.g., Cray,* 871 F.3d 1355; *Univ. of Minn.*, 299 F. Supp. 3d 1034; *Free-Flow Packaging,* 2017 U.S. Dist. LEXIS 156997; *Automated Packaging*, 2018 U.S. Dist. LEXIS 5910; *Precision Fabrics*, 2017 U.S. Dist. LEXIS 184153; *Zaxcom*, 2019 U.S. Dist. LEXIS 16975; *Niazi v. St. Jude Med. S.C., Inc.*, Case Nos. 17-cv-183-jdp, 17-cv-184-jdp, 17-cv-185-jdp, 17-cv-283-jdp, 2017 U.S. Dist. LEXIS 183849, at *7-11 (E.D. Wis. Nov. 7, 2017) (unpublished) (finding improper venue because no regular and established place of business).

sales representatives to be out in the field.  (Dkt. No. 157-1 at ¶¶ 11-12; Dkt. No. 164-1 at ¶ 7; Ex. F, De Leon Tr. at 16:4-17:5; 135:15-136:16.)   Additionally, in *RegenLab*, the Eclipse employees needed to be in close proximity to their customers to "develop and maintain local luminaries, workshops and training centers."  *RegenLab*, 335 F. Supp. 3d at 551 (nature of the employees' responsibilities "necessitate[d] proximity to customers.").   However, there is no evidence that Smiths Medical's sale representatives' responsibilities in Utah necessitated residence in Utah.  Though Smiths Medical's sales representatives conducted demonstrations at customer locations

(Ex. F, De Leon Tr. at 81:18-82:22; 121:17-122:12), sales representatives were not required to live within close proximity to their customers.  In fact, 14 out of 16 Smiths Medical sales representatives responsible for covering Utah for various business units lived outside Utah.  (Ex. A, Supp. Resp. at 3-4 (Rog. No. 1).)  Although Smiths Medical had a preference that its sales representatives live in the territory they service, at no time in 2012 (or through the present) has Utah been a single state territory, nor has Smiths Medical required any sales representative to live in Utah.  (Ex. A, Supp. Resp. at 8, (Rog. No. 3); Dkt. No. 157-1 at ¶ 10; Ex. F, De Leon Tr. at 58:15-59:18.)

In *RegenLab* the Court also found the "regular and established place of business" prong was satisfied because the employees conducted Eclipse's business at their home offices by contacting customers and taking initial sales orders.  *RegenLab*, 335 F. Supp. 3d at 550. However, it would have been atypical and inconsistent with normal business practice for a Smiths Medical sales representative to place an order from a home office or otherwise.  (Dkt. No. 157-1 at ¶ 11; Ex. F, De Leon Tr. at 181:6-182:10.)  Smiths Medical's products are primarily

such that healthcare systems and acute and non-acute care facilities order directly from Smiths Medical or through a prime distributor.  (*Id.*)

The Court in *RegenLab* also put weight on the fact that Eclipse sales representatives living within the District had a "kit" they took to the customer location for demonstrations. *RegenLab*, 335 F. Supp. 3d at 552.  Notably, the "kit" was a PRP kit.  *Id*.  According to Eclipses's website, a PRP kit utilizes "a separator gel technology to isolate . . . platelets while eliminating the undesirable components such as red blood cells and inflammatory white blood cells." (Ex. J.)  In *RegenLab*, the "kit" was used *after* the customer received the products that the sales representative ordered for the customer.  *RegenLab*, 335 F. Supp. 3d at 550, 552.  As a general matter Smiths Medical's products are consumable-type products that physicians know how to use.  (Ex. F, De Leon Tr. at 34:3-38:23; 181:18-25.)

Significantly, in *RegenLab* the Court emphasized that no one factor in the venue analysis is determinative.  *RegenLab*, 335 F. Supp. 3d at 552.  While the very particular facts in *RegenLab* were sufficient to find venue, as demonstrated, the facts as they relate to Smiths Medical are insufficient.

## 2.    Other case law previously relied on by Bard is inapposite.

While Bard previously argued in its opposition to Smiths Medical's original Motion to Transfer that the storage unit could be considered a "place of business" the cases it relied on are inapposite.  For example, previously Bard tried to analogize the storage unit in this case to the Amazon Lockers at issue in *Rensselaer Polytechnic*, which were owned by Amazon and branded with Amazon's logo, advertisements for its online marketplace, and a customer service number, and were used for customers to collect packages.  *Rensselaer Polytechnic Inst. v. Amazon.com, Inc*., No. 1:18-cv-00549 (BKS/CFH), 2019 U.S. Dist. LEXIS 136436, at *9 (N.D.N.Y. Aug. 7, 2019) (unpublished).  However, there is no analogy to be drawn.  Here, the storage unit used by

Smiths Medical's sales representatives was leased to a sales representative by a third party, did not have signage associating it with Smiths Medical and no customers collected any products from the storage unit.  (Dkt. No. 157-1 at ¶ 15.)

Bard's previous reliance on *Seven Networks, LLC v. Google LLC,* 315 F. Supp. 3d 933 (E.D. Tex. 2018) fares no better.  In *Seven Networks*, computer servers were found to be "spaces for storage" due to the servers integral role in Google's business.  *Id.* at 960-961, 966.  But, the unbranded storage unit at issue here was not integral to Smiths Medical's business model and was merely a place for sales representatives to store and pick up material so as not to have to carry it in their cars.  (Ex. A, Supp. Resp. at 12 (Rog. No. 5); Ex. F, De Leon Tr. at 21:2-27:5 (discussing phasing out of storage units); 138:5-141:22.)  Indeed, use of the storage unit was unmanaged and haphazard at best. *See supra* Section III.A.2; *Univ. of Minn.*, 299 F. Supp. 3d at 1043 (storage unit managed and used by employees insufficient to create a "regular and established physical foothold" of defendant).

Finally, *CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., In*c., No. 13-CV-5669 (NSR), 2018 U.S. Dist. LEXIS 87999 (S.D.N.Y. May 24, 2018) (unpublished) is no more applicable after venue discovery than it was previously because Smiths Medical did not conduct business at the storage unit.  *CDx*, 2018 U.S. Dist. LEXIS 87999, at *7 (Plaintiffs [] failed to demonstrate that Defendant 'actually engage[s] in business from [either] location.'").  Likewise, "no 'employee or agent of [Smiths Medical] conduct[s] business at' the storage unit[], whatsoever." *Id.*; (*see also* Dkt. No. 157-1 at ¶ 15 (employees did not conduct or transact business at storage unit)).

### E.       The Filing Date in 2012 Is the Operative Date for Analyzing Venue

The operative date in this case for analyzing venue is the January 2012 filing date of the Complaint.  *See Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017)

(relying on strict statutory construction to support filing date of Complaint for venue analysis); *Rensselaer*, 2019 U.S. Dist. LEXIS 136436, at *28-29 (same).

While some courts hold that venue under §1400(b) is proper as long as the defendant had a regular and established place of business at the time the cause of action accrued and the suit is filed a reasonable time thereafter, in its previous opposition Bard overreached with its reliance on this approach to support its request for discovery beyond 2012.[8] *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450, 455 (N.D. Ill. 2019) (discussing accrual approach and applying same under particular facts). Bard's emphasis on the phrase "at the time the cause of action accrued" and reliance on the theory that alleged infringement is a continuing tort to argue venue should be determined based on current facts nullifies the "reasonable time thereafter" requirement. The five-month period in *Motorola* is quite different from the more than seven years here. *See Motorola,* 402 F. Supp. 3d at 455-56 (venue proper where lease signed before filing complaint and business established five months later); *ParkerVision, Inc. v. Apple, Inc.*, No. 3:15-CV-1477-J-39JRK, 2018 U.S. Dist. LEXIS 225126, at *23 (M.D. Fla. Mar. 8, 2018) (unpublished) (two to six week delay in filing only five days more than 37-day delay in *Welch*, and much less than 21-month delay in *Personal Audio*).

Nevertheless, Bard's timing argument is of no moment because, by 2014, one of the two sales representatives living in Utah left the company and the storage unit was entirely phased out and no sales representative covering Utah was reimbursed. From 2014 to 2019, only one sales representative (one of the two who lived there in 2012) continued to live in Utah, but by August

---

[8] *Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. In*c., No. 17-CV-147(KAM)(CLP), 2020 U.S. Dist. LEXIS 61122, at *23  (E.D.N.Y. Apr. 7, 2020) (unpublished) ("neither line of precedent considers exclusively post-filing activity in establishing venue.") citing *Omega Patents, LLC v. CalAmp Corp*., No. 13-cv-1950-Orl-40DCI, 2017 U.S. Dist. LEXIS 186645, at *5  (M.D. Fla. Sept. 22, 2017) ("[V]enue must be determined at the time the action is filed and not at some future date in the proceedings.").).

2019 she too left the company and Smiths Medical has no employees living in Utah (not even a sales representative).   (Dkt. No. 164-1, Torinus Decl. at ¶ 3; Ex. A, Supp. Resps. at 3-5 (Rog. No. 1).)

While there were no facts to support venue in 2012, there is no change in circumstances that would support venue as of 2020.  Smiths Medical never had and does not have today a regular and established place of business in this District.

## IV.    MINNESOTA IS THE APPROPRIATE VENUE UNDER § 1406(a)

Minnesota is the appropriate venue because Smiths Medical's corporate headquarters, global functions, and principal place of business are located in Minnesota.  (*See* Dkt. No. 157 at 9-10.)  Though Smiths Medical is incorporated in Delaware, the nerve center is in Minnesota. Further, there is no efficiency gained by transferring this case to Delaware because of the AngioDynamics case.  This Court previously denied consolidation (2:12-cv-00032-RJS, Dkt. No. 71) and AngioDynamics' history in Delaware with other related patents and previous *Inter Partes* Reexamination challenge to the patents-in-suit puts it in a different position than Smiths Medical.  Bard's reliance in its Opposition to Smiths Medical's original Motion to Transfer (Dkt. No. 160 at 15), on *Genuine Enabling Tech., LLC v. Nintendo Co., Ltd.,* 369 F. Supp. 3d 590 (D. Del. 2019) is inapplicable.  The defendants there were related (Nintendo (Japan) and Nintendo of America) and the same patents and accused products were at issue unlike here where Smiths Medical and AngioDynamics are competitors with different products.  Additionally, here, Bard's choice of forum (to the extent Bard expresses a preference for Delaware) should be given little weight as Bard neither resides in Delaware nor do the facts of this case have any material connection to Delaware.  *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1168 (10th Cir. 2010) (less deference where plaintiff does not reside in chosen forum and facts giving rise to lawsuit have no material relation to the plaintiff's chosen forum).

## V.     CONCLUSION

For the foregoing reasons Smiths Medical's Renewed Motion to Transfer to Minnesota should be granted.

Dated: June 30, 2020                                Respectfully submitted,


                                                    /s/ R. Jan Pirozzolo-Mellowes
                                                    Michael D. Johnston (11273)
*Of Counsel:*                                       KIRTON & McCONKIE
Jeffrey N. Costakos (*Pro Hac Vice*)                1800 Eagle Gate Tower
R. Jan Pirozzolo-Mellowes (*Pro Hac Vice*)          60 East South Temple
H. Holden Brooks (*Pro Hac Vice*)                   Salt Lake City, UT 84111
Michelle A. Moran (*Pro Hac Vice*)                  Telephone: (801) 328-3600
FOLEY & LARDNER LLP                                 Facsimile: (801) 321-4893
777 E. Wisconsin Avenue                             mjohnston@kmclaw.com
Milwaukee, WI 53202-5306
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
jcostakos@foley.com
jpirozzolo-mellowes@foley.com
hbrooks@foley.com                                   *Attorneys for Defendant Smiths Medical ASD, Inc.*
mmoran@foley.com