# EXHIBIT A

CONFIDENTIAL - ATTORNEYS EYES ONLY

Jeffrey N. Costakos (*Pro Hac Vice*)
R. Jan Pirozzolo-Mellowes (*Pro Hac Vice*)
H. Holden Brooks (*Pro Hac Vice*)
Michelle A. Moran (*Pro Hac Vice*)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
jcostakos@foley.com
jpirozzolo-mellowes@foley.com
hbrooks@foley.com
mmoran@foley.com

Michael D. Johnston (11273)
KIRTON & McCONKIE
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
mjohnston@kmclaw.com

*Attorneys for Defendant Smiths Medical ASD, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| C.R. BARD, INC., BARD PERIPHERAL VASCULAR, INC. and BARD ACCESS SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SMITHS MEDICAL ASD, INC., <br><br> Defendant. | Case No. 2:12-cv-00036-RJS-DAO <br><br> **SMITHS MEDICAL ASD, INC.'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES (NOS. 1-5)** <br><br> JUDGE ROBERT J. SHELBY <br><br> MAGISTRATE JUDGE DAPHNE A. OBERG |

CONFIDENTIAL - ATTORNEYS EYES ONLY

Pursuant to Fed. R. Civ. P. 26(e), Smiths Medical, by its and through its attorneys, hereby supplements its Response and Objections to Bard's First Set of Interrogatories to Defendant Smiths Medical ASD, Inc. (Nos. 1-5).  Smiths Medical incorporates by reference its General Objections from its initial Responses and Objections, served April 17, 2020.

By supplementing its Response and Objections, Smiths Medical does not waive any objection that may be applicable to: (a) the use, for any purpose, by Bard of any information provided in response; or (b) the admissibility, relevance, or materiality of any of the information to any issue in this case.  Moreover, a response stating that Smiths Medical will produce information regarding an interrogatory does not constitute an admission that any information regarding that request exists or can be located after a reasonable search, or is known or reasonably available to Smiths Medical.  Each and every General Objection shall be deemed to be incorporated in full into the individual responses set forth below.  Any specific objections to an interrogatory are made in addition to the General Objections, not as a replacement for them.

Smiths Medical's investigation into the parties' claims and defenses is continuing.  Smiths Medical's objections and response to these interrogatories are based upon the information in its possession after diligent inquiry at the time of preparation of this response.  Smiths Medical reserves the right to amend, supplement, modify, and/or correct its objections or responses to these interrogatories – as well as to any of the other interrogatories Bard serves – as additional information becomes available to Smiths Medical in the course of its investigation and as discovery in this case progresses.

CONFIDENTIAL - ATTORNEYS EYES ONLY

**INTERROGATORY NO. 1:**

From January 2012 to the present, identify all Smiths employees or agents, including but not limited to Utah Employees, that have lived or worked in Utah during their employment or agency for Smiths, and for each person, provide the Utah address(es) or location(s) at which they resided or worked, describe the nature of their work or agency in Utah, including any demonstrations, tutorials, educational programs, sales calls, or meetings that the person attended, participated in, or was involved with in Utah, describe any sales placed by, facilitated by, or attributable to each person in Utah, and describe the physical location(s) where they store, keep, or maintain any Smiths' products, inventory, samples, supplies, promotional material, literature or equipment.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Smiths Medical incorporates its General Objections herein by reference.  Smiths Medical

objects to this Interrogatory to the extent it seeks information that is neither relevant to the venue

related discovery at issue in this case nor proportional to the needs of the case.

Smiths Medical objects to this Interrogatory to the extent it contains four separate

interrogatories, set forth below, which when combined with all of Bard's interrogatories, exceeds

the Court's Order limiting Bard to five (5) interrogatories, (Dkt. No. 168 at 5):

(1) identify all Smiths employees or agents, including but not limited to Utah Employees, that have lived or worked in Utah during their employment or agency for Smiths, and for each person, provide the Utah address(es) or location(s) at which they resided or worked,

(2) describe the nature of their work or agency in Utah, including any demonstrations, tutorials, educational programs, sales calls, or meetings that the person attended, participated in, or was involved with in Utah,

(3) describe any sales placed by, facilitated by, or attributable to each person in Utah, and

(4) describe the physical location(s) where they store, keep, or maintain any Smiths' products, inventory, samples, supplies, promotional material, literature or equipment.

Smiths Medical objects to this Interrogatory to the extent it seeks information beyond any

activities that occurred in Smiths Medical's employees' Utah-based home offices or involving any

storage unit located in Utah, as any activities occurring outside of Smiths Medical's employees'

2

CONFIDENTIAL - ATTORNEYS EYES ONLY

Utah-based home offices and any Utah-based storage unit are beyond the scope of the "topics relating to the subject matter identified in Bard's Opposition." (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units in 2012" and "the extent to which Smiths' Utah-based employees worked out of their home offices in 2012." (Dkt. No. 160 at 11).)

Smiths Medical objects to this Interrogatory to the extent it seeks information after 2012, which is beyond the scope of the venue discovery granted by the Court. (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units **in 2012**" and "the extent to which Smiths' Utah-based employees worked out of their home offices **in 2012**." (Dkt. No. 160 at 11 (emphasis added)).) Smiths Medical further objects to this Interrogatory to the extent it seeks information about time periods not relevant to the venue analysis. *See Pers. Audio, LLC v. Google, Inc*., 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (relying on strict statutory construction to support filing date of Complaint for venue analysis).

Subject to its General and Specific Objections, Smiths Medical limits its response to the first discrete interrogatory as identified above and responds as follows:

The following Smiths Medical employees resided in Utah in 2012 and performed a portion of their work in Utah during 2012:

| Name | Business Unit |
|---|---|
| Claudia Campbell<br>Salt Lake City, UT | Acute Care |
| Mike Franson<br>Taylorsville, UT | Alternate Care |

3

CONFIDENTIAL - ATTORNEYS EYES ONLY

The following Smiths Medical employees did not reside in Utah in 2012 but were sales representatives covering Utah for at least a portion of 2012:

| Name | Business Unit |
|---|---|
| John Arata | Original Equipment Manufacturing (OEM) |
| Ken Brague | Vascular Access |
| Ronnie Brown | Surgivet |
| Keith Harper | Surgivet |
| Mark Logsdon | Critical Care |
| Chris Metzler | Alternate Care |
| Kurt Meyer | Acute Care |
| Bailey Ogrin | Safety |
| Jennifer Pifer | Infusion |
| Matt Ramey | Respiratory |
| Marlena Schultz | Peripheral Intravenous Catheters (PIVC) |
| Mark Shelton | Alternate Care |
| Steven Thomas | Safety |
| Erik Wendehost | Original Equipment Manufacturing (OEM) |

Smiths Medical further responds, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, by identifying the following documents from which the information sought by this Interrogatory may be ascertained: SM-0000022 – SM-0000024; SM-0000025 – SM-0000027; SM-0000028 – SM-0000031; SM-0000032 – SM-0000034; SM-0000069 – SM-0000094; SM-0000095 – SM-0000097; SM-0000098 – SM-0000102; SM-0000103 – SM-0000109; SM-0000110 – SM-0000113; SM-0000114 – SM-0000117; SM-0000118 – SM-0000120; SM-0000121 – SM-0000122; SM-0000123 – SM-0000126; SM-0000127 – SM-0000160; SM-0000161 – SM-0000202; SM-0000203 – SM-0000244; SM-0000249 – SM-0000252; SM-0000253 – SM-0000256; and SM-0000257 – SM-0000260.

Smiths Medical states that while Smiths Medical maintains its objections, subject to the agreement of the parties and in an effort to resolve a dispute between the parties regarding the relevance of and discoverability pursuant to the Court's Order of certain information, Smiths Medical provides the following information:

4

CONFIDENTIAL - ATTORNEYS EYES ONLY

Smiths Medical employed Ms. Campbell from at least January 2012 until August 6, 2019 and Mr. Franson from at least January 2012 until September 6, 2014.  The types of activities they performed did not change appreciably after the 2012 time period relative to the administrative portion of their job responsibilities.

**INTERROGATORY NO. 2:**

> From January 2012 to the present, describe in detail Smiths' policies, procedures, and practices regarding expense reimbursement and provision of support, goods, or services to any Smiths employee or agent in Utah, including but not limited to Utah Employees, including, for example, all products, samples, inventory, supplies, literature, promotional material, training material, educational material, business cards, home office, vehicles, mileage, and electronic or communication devices, and describe all instances in which Smiths has reimbursed expenses or provided any of the above materials to any employee or agent in Utah.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Smiths Medical incorporates its General Objections herein by reference.  Smiths Medical objects to this Interrogatory to the extent it seeks information that is neither relevant to the venue related discovery at issue in this case nor proportional to the needs of the case.

Smiths Medical objects to this Interrogatory to the extent it contains two separate interrogatories, set forth below, which when combined with all of Bard's interrogatories, exceeds the Court's Order limiting Bard to five (5) interrogatories, (Dkt. No. 168 at 5):

> (1) policies, procedures, and practices regarding expense reimbursement and provision of support, goods, or services to any Smiths employee or agent in Utah, including but not limited to Utah Employees, including, for example, all products, samples, inventory, supplies, literature, promotional material, training material, educational material, business cards, home office, vehicles, mileage, and electronic or communication devices, and

> (2) describe all instances in which Smiths has reimbursed expenses or provided any of the above materials to any employee or agent in Utah.

Smiths Medical objects to this Interrogatory to the extent it is not limited to Smiths Medical's Utah-based employees or related to any storage unit located in Utah.  Specifically, Smiths Medical objects to this Interrogatory to the extent it seeks information regarding "any

5

CONFIDENTIAL - ATTORNEYS EYES ONLY

Smiths Medical employees or agents in Utah … not limited to Utah Employees" as beyond the scope of the "topics relating to the subject matter identified in Bard's Opposition." (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units in 2012" and "the extent to which Smiths' Utah-based employees worked out of their home offices in 2012." (Dkt. No. 160 at 11).)

Smiths Medical objects to this Request to the extent it seeks information after 2012, which is beyond the scope of the venue discovery granted by the Court. (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units **in 2012**" and "the extent to which Smiths' Utah-based employees worked out of their home offices **in 2012**." (Dkt. No. 160 at 11 (emphasis added)).) Smiths Medical further objects to this Interrogatory to the extent it seeks information about time periods not relevant to the venue analysis. *See Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (relying on strict statutory construction to support filing date of Complaint for venue analysis).

Subject to and without waiving its General and Specific Objections, Smiths Medical limits its response to the first discrete interrogatory as identified above and responds as follows: pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Smiths Medical identifies the following documents from which the information sought by this Interrogatory may be ascertained: SM-0000001 – SM-0000005; SM-0000006 – SM-0000021; SM-0000035; SM-0000036; SM-0000037; SM-0000038; SM-0000039; SM-0000040; SM-0000041; SM-0000042 – SM-0000048; SM-0000049 – SM-0000063; SM-0000064 – SM-0000068; and SM-0000245 – SM-0000248.

CONFIDENTIAL - ATTORNEYS EYES ONLY

**INTERROGATORY NO. 3:**

Describe in detail Smiths' policies, procedures, and practices regarding assignment of sales representatives to specific regions or territories, including but not limited to the manner in which regions or territories are defined and the process and criteria involved in recruiting, hiring, and evaluating sales representatives.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Smiths Medical incorporates its General Objections herein by reference. Smiths Medical objects to this Interrogatory to the extent it seeks information that is neither relevant to the venue related discovery at issue in this case nor proportional to the needs of the case. Smiths Medical objects to this Interrogatory to the extent it seeks information unlimited by time.

Smiths Medical objects to this Interrogatory to the extent it contains three separate interrogatories, set forth below, which when combined with all of Bard's interrogatories, exceeds the Court's Order limiting Bard to five (5) interrogatories, (Dkt. No. 168 at 5):

(1) policies, procedures, and practices regarding assignment of sales representatives to specific regions or territories,

(2) the manner in which regions or territories are defined

(3) the process and criteria involved in recruiting, hiring, and evaluating sales representatives.

Smiths Medical objects to this Interrogatory because it is beyond the scope of the "topics relating to the subject matter identified in Bard's Opposition." (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units in 2012" and "the extent to which Smiths' Utah-based employees worked out of their home offices in 2012." (Dkt. No. 160 at 11).)

Smiths Medical objects to this Interrogatory to the extent it seeks information after 2012, which is beyond the scope of the venue discovery granted by the Court. (Dkt. No. 168 at 5, limiting

7

CONFIDENTIAL - ATTORNEYS EYES ONLY

Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units **in 2012**" and "the extent to which Smiths' Utah-based employees worked out of their home offices **in 2012**." (Dkt. No. 160 at 11 (emphasis added)).) Smiths Medical further objects to this Interrogatory to the extent it seeks information about time periods not relevant to the venue analysis. *See Pers. Audio, LLC v. Google, Inc*., 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (relying on strict statutory construction to support filing date of Complaint for venue analysis).

Subject to its General and Specific Objections, Smiths Medical states that while Smiths Medical maintains its objections, subject to the agreement of the parties and in an effort to resolve a dispute between the parties regarding the relevance of and discoverability pursuant to the Court's Order of information about Smiths Medical's preferences as to the location of employee residences, Smiths Medical provides the following information:

Although there was no written policy in 2012, it was generally the expectation that sales representatives live within the territory they serviced. However, with respect to Utah in particular, from 2012 through the present, Utah has never been a single state territory, and at no time has a sales representative covering Utah as part of his or her territory been required to live in Utah.

**INTERROGATORY NO. 4:**

For the period of January 2012 to the present, describe in detail any activity by any Smiths sales representative that took place in Utah, including but not limited to each demonstration, sales call, meeting, training, tutorial, trade show, or educational program that occurred in Utah, and the extent to which any such events involve use of products, samples, inventory, equipment, supplies, promotional material, or literature.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Smiths Medical incorporates its General Objections herein by reference. Smiths Medical objects to this Interrogatory to the extent it seeks information that is neither relevant to the venue related discovery at issue in this case nor proportional to the needs of the case. Smiths Medical

CONFIDENTIAL - ATTORNEYS EYES ONLY

objects to this Interrogatory to the extent "any activity" is overly broad, unduly burdensome, and beyond the scope of venue related discovery at issue in this case.

Smiths Medical objects to this Interrogatory to the extent it is not limited to activities occurring in Smiths Medical's employees' Utah-based home offices or any Utah-based storage facility.  Specifically, Smiths Medical objects to this Interrogatory because it seeks information regarding "any activity by any Smiths sales representative that took place in Utah" which is beyond the scope of the "topics relating to the subject matter identified in Bard's Opposition."  (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units in 2012" and "the extent to which Smiths' Utah-based employees worked out of their home offices in 2012."  (Dkt. No. 160 at 11).)

Smiths Medical objects to this Interrogatory to the extent it seeks information after 2012, which is beyond the scope of the venue discovery granted by the Court.  (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units **in 2012**" and "the extent to which Smiths' Utah-based employees worked out of their home offices **in 2012**."  (Dkt. No. 160 at 11 (emphasis added)).) Smiths Medical further objects to this Interrogatory to the extent it seeks information about time periods not relevant to the venue analysis.  *See Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (relying on strict statutory construction to support filing date of Complaint for venue analysis).

Smiths Medical objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 1.

Subject to its General and Specific Objections, Smiths Medical responds as follows:

9

CONFIDENTIAL - ATTORNEYS EYES ONLY

As identified in Smiths Medical's response to Interrogatory No. 1, Smiths Medical had two employees who resided in Utah in 2012, Claudia Campbell and Mike Franson.  A Key Account Manager of the sort like Claudia Campbell, typically spent approximately one to two days per week working from his or her residence.  Generally speaking, typical home office tasks for a Key Account Manager would include administrative tasks such as analyzing business opportunities and risks, preparing expense reports, having one to one discussions with their account managers within their assigned Regions to coordinate sales efforts and customer support, and participating in telephone calls with the Smiths Medical management team, with the internal marketing group and finance teams, and with customers.  In 2012, sales representatives were not required to submit time sheets or activity logs.  Claudia Campbell ceased working for Smiths Medical in August 2019. *See* Response to Interrogatory No. 1.

For much of 2012 Mr. Franson was a Distribution Manager focusing on large national distributors on the Alternate Care side of the Smiths Medical's business, he then transitioned to the role of Account Manager focusing on local and regional distributors as well as individual end user customers and/or points of care within the non-acute market later in 2012, and ceased working for Smiths Medical in September 2014.  *See* Response to Interrogatory No. 1.  Generally speaking, a Distribution Manager, or an Account Manager, on the Alternate Care side of the business typically spends approximately one day per week working from a home office.  Activities of a Distribution Manager or an Account Manager on the Alternate Care side of the business were similar to that of a Key Account Manager in that they analyzed their business opportunities and risks, and had discussions with cross functional colleagues within Smiths Medical, however, they also contacted customers to schedule appointments and provide follow-up service and support, prepared and submitted their personal expense reports, had live discussions with their direct

10

CONFIDENTIAL - ATTORNEYS EYES ONLY

managers to discuss business opportunities and secure guidance, direction, and support, and typically spent a fair amount of time on contract management and working with distributors.  In 2012, Distribution Managers and Account Managers were not required to submit time sheets or activity logs.

Smiths Medical further responds, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, by identifying the following documents from which the information sought by this Interrogatory may be ascertained: SM-0000042 – SM-0000048; SM-0000098 – SM-0000102; SM-0000249 – SM-0000252; SM-0000253 – SM-0000256; and SM-0000257 – SM-0000260.

**INTERROGATORY NO. 5:**

Describe in detail, from January 2012 to the present, the facts and circumstances surrounding Smiths sales representatives' use of any storage unit(s) in Utah, including, for example, how many sales representatives used storage units, how many storage units were used by Smiths' sales representatives in Utah, the process through which the units were selected, purchased, leased, or rented, any agreements surrounding the unit, who paid for the unit, and whether such payments were reimbursed, what the sales representatives stored in the storage units, and how frequently they were used and accessed.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Smiths Medical incorporates its General Objections herein by reference.  Smiths Medical objects to this Interrogatory to the extent it seeks information that is neither relevant to the venue related discovery at issue in this case nor proportional to the needs of the case.

Smiths Medical objects to this Interrogatory to the extent it seeks information after 2012, which is beyond the scope of the venue discovery granted by the Court.  (Dkt. No. 168 at 5, limiting Bard to subject matter identified in its opposition where Bard requested information on "facts underlying Smiths' use of storage units **in 2012**" and "the extent to which Smiths' Utah-based employees worked out of their home offices **in 2012**."  (Dkt. No. 160 at 11 (emphasis added)).)  Smiths Medical further objects to this Interrogatory to the extent it seeks information about time periods not relevant to the venue analysis.  *See Pers. Audio, LLC v. Google, Inc*., 280 F. Supp. 3d

11

CONFIDENTIAL - ATTORNEYS EYES ONLY

922, 931 (E.D. Tex. 2017) (relying on strict statutory construction to support filing date of Complaint for venue analysis).

Subject to its General and Specific Objections, Smiths Medical responds as follows:

In 2012, the sales representatives whose territory included Utah had shared access to a 10′ x 20′ self-storage unit in Murray, Utah.  In 2012 it is believed to have been leased by Mark Logsdon and the cost of the lease was a reimbursable expense that was reimbursed to Mr. Logsdon during 2012.  In 2013, it is believed that Claudia Campbell assumed the lease of the storage unit in Murray, Utah and the cost of the lease was reimbursed to Ms. Campbell until the end of the lease in July 2014.  In 2012, the storage unit was used to store supplies such as product samples, including for example, small quantities of consumable products such as tracheostomy tubes, marketing literature, or heavier pieces of capital equipment, which would then be transported via company issued vehicles by the sales representatives for use during customer presentations, demonstrations, and evaluations within either acute or non-acute customer facilities.  For example, the heavy capital equipment which is believed to have been stored in the storage unit may have included: Smiths Medical's Level 1 portfolio of products such as fluid warmers, rapid infusors, blanket warmers; Smiths Medical's Pnuepac line of products such as transport ventilators; Smiths Medical's BCI products such as capnography monitoring equipment; and potentially Smiths Medical's CADD or Medfusion infusion pumps.  Such a storage unit was for the exclusive use of Smiths Medical's sales representatives whose territory included Utah and based on Smiths Medical's investigation, some sales representatives only visited the storage unit once with their manager.  Smiths Medical employees did not conduct or transact business at such a storage facility and did not store product inventory there or distribute products from there.  Smiths Medical also incorporates by reference its response to Interrogatory No. 4 and the Declaration of Robert J.

12

CONFIDENTIAL - ATTORNEYS EYES ONLY

DeLeon, (Dkt. No. 157-1), at ¶ 15.  Smiths Medical further responds, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, by identifying the following documents from which the information sought by this Interrogatory may be ascertained: SM-0000245 – SM-0000248.


AS TO OBJECTIONS:


      Dated: May 15, 2020                Respectfully submitted,

                                            /s/ R. Jan Pirozzolo-Mellowes

*Of Counsel:*                          Michael D. Johnston (11273)

Jeffrey N. Costakos (*Pro Hac Vice*)        KIRTON & MCCONKIE

R. Jan Pirozzolo-Mellowes (*Pro Hac Vice*)   1800 Eagle Gate Tower

H. Holden Brooks (*Pro Hac Vice*)       60 East South Temple

Michelle A. Moran (*Pro Hac Vice*)      Salt Lake City, UT 84111

FOLEY & LARDNER LLP          Telephone: (801) 328-3600

777 E. Wisconsin Avenue         Facsimile: (801) 321-4893

Milwaukee, WI 53202-5306       mjohnston@kmclaw.com

Telephone: (414) 271-2400

Facsimile: (414) 297-4900

jcostakos@foley.com

jpirozzolo-mellowes@foley.com     *Attorneys for Defendant Smiths Medical ASD,*

hbrooks@foley.com                   *Inc.*

mmoran@foley.com

13

## VERIFICATION

I, Robert J. DeLeon am authorized to make this verification for and on behalf of Smiths Medical ASD, Inc.  I declare that I have been informed about SMITHS MEDICAL ASD, INC.'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES (NOS. 1-5) and know the contents thereof of this response; that said response was prepared with the assistance and advice of counsel upon which I have relied; that the response, subject to inadvertent or undiscovered errors, is based on and therefore necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of this response; that consequently I reserve the right to make any changes in this response if it appears at any time that omission or errors have been made therein or that more accurate information is available; that subject to the limitations set forth herein, the same response is true to the best of my knowledge and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 15ᵗʰ the day of May 2020.

Robert J. DeLeon

4832-2571-6666.1

CONFIDENTIAL - ATTORNEYS EYES ONLY

## **CERTIFICATE OF SERVCE**

    I certify that on May 15, 2020, the attached SMITHS MEDICAL ASD, INC.'s FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES (NOS. 1-5) was served upon counsel of record via e-mail.


/s/ Michelle A. Moran
Michelle A. Moran