IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| C.R. BARD, INC and BARD PERIPHERAL VASCULAR, INC., | ) ) ) ) | |
| Plaintiffs/Counterclaim-Defendants, | ) ) ) | |
| v. | ) ) | C.A. No. 20-1543 (CFC) |
| SMITHS MEDICAL ASD, INC., | ) ) ) | |
| Defendant/Counterclaim-Plaintiffs. | ) ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO SMITHS
MEDICAL ASD, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

Steven C. Cherny
Matthew A. Traupman
Brian B. Biddinger
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

December 14, 2021

*Attorneys for Plaintiffs*
*C.R. Bard, Inc. and Bard Peripheral*
*Vascular, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................. 2

    A.    Bard's '302 and '022 Patent Infringement Claims ............................. 2

    B.    The Federal Circuit and Judge Nielson Rule That Bard's Patents Are Valid ................................................................................ 3

    C.    Judge Shelby Rules That Bard's Patents Are Invalid .......................... 4

SUMMARY OF THE ARGUMENT ......................................................... 5

ARGUMENT ........................................................................................... 6

I.    LEGAL STANDARD ......................................................................... 6

II.    COLLATERAL ESTOPPEL DOES NOT PRECLUDE BARD'S CLAIMS ....................................................................................... 8

    A.    Judge Shelby's Decision Should Not Be Considered Preclusive ........ 8

    B.    The Issues Before Judge Shelby Are Not Identical To Those Here ................................................................................ 13

    C.    Bard Did Not Have a Full and Fair Chance to Litigate the Validity of the Claims Asserted Here ................................................. 17

III.    IN THE ALTERNATIVE, THIS COURT SHOULD STAY CONSIDERATION OF SMITHS' MOTION ................................. 18

CONCLUSION ....................................................................................... 20

## TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Gen. Motors LLC*,
No. 18-621-LPS, 2019 WL 4393177 (D. Del. Sept. 13, 2019) .............. 7, 14

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*,
402 U.S. 313 (1971) ..................................................................10

*In re Brown*,
951 F.2d 564 (3d Cir. 1991) ............................................................8

*CardioNet, LLC v. ScottCare Corp.*,
325 F. Supp. 3d 607 (E.D. Pa. 2018)..........................................19

*C.R. Bard, Inc. v. AngioDynamics, Inc.*,
748 F. App'x. 1009 (Fed. Cir. 2018).....................................2, 15

*C.R. Bard, Inc. v. AngioDynamics, Inc.*,
979 F.3d 1372 (Fed. Cir. 2020) ..........................................passim

*Convergence Corp. v. Videomedia*,
539 F. Supp. 760 (N.D. Cal. 1981)............................................20

*Cronos Techs., LLC v. Expedia, Inc.*,
No. 13-1538-LPS, 2015 WL 5234040 (D. Del. Sept. 8, 2015)............. 15, 17

*Delaware River Port Auth. v. Fraternal Ord. of Police*,
290 F.3d 567 (3d Cir. 2002) ............................................................7

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
70 F. Supp. 3d 808 (E.D. Tex. 2014) .....................................12, 19

*Dyndul v. Dyndul*,
620 F.2d 409, 412 (3d Cir.1980) ......................................................8

*Endo Pharms., Inc. v. Impax Lab'ys, Inc.*,
No. CV 16-2526(JLL), 2016 WL 6246773 (D.N.J. Oct. 25, 2016) .............19

*Free Speech Coalition, Inc. v. Att'y Gen. of the United States*,
677 F.3d 519 (3d Cir. 2012) ............................................................8

*Galderma Lab'ys Inc. v. Amneal Pharms., LLC*,
921 F. Supp. 2d 278 (D. Del. 2012) ............................................19

*Glen v. Trip Advisor LLC*,
529 F. Supp. 3d 316 (D. Del. 2021) ...............................9, 10, 13

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ...............................................19

*Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*,
    515 F.2d 964 (3d Cir. 1975) .....................................................11

*Martin v. Malhoyt*,
    830 F.2d 237 (D.C. Cir. 1987) ..................................................18

*NetSoc, LLC v. Chegg Inc.*,
    No. 18-CV-10262(RA), 2020 WL 174305 (S.D.N.Y. Jan. 13, 2020) .........19

*Orexo AB v. Actavis Elizabeth LLC*,
    371 F. Supp. 3d 175 (D. Del. 2019) ..................................... 7, 13

*In re PATCO*,
    699 F.2d 539 (D.C. Cir. 1983) ..................................................18

*Peloro v. United States*,
    488 F.3d 163 (3d Cir. 2007) .....................................................11

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999) ................................................12

*Rice v. Dep't of the Treasury*,
    998 F.2d 997 (Fed. Cir. 1993) ..................................................12

*Sound View Innovations, LLC v. Walmart Inc.*,
    No. 19-660-CFC-CJB, 2019 WL 7067056 (D. Del. Dec. 23, 2019),
    *report and recommendation adopted*, 2020 WL 136864 (D. Del. Jan.
    13, 2020) ................................................................... 13, 18

*SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*,
    718 F.2d 365 (Fed. Cir. 1983) ..................................................12

*Studiengesellschaft Kohle, mbH v. USX Corp.*,
    675 F. Supp. 182 (D. Del. 1987) ...............................................11

## STATUTES

35 U.S.C. § 101 ........................................................................1, 4

## RULES AND REGULATIONS

Fed. R. Civ. P. 56(f) .........................................................................18

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 107 ....................................18

Restatement (Second) of Judgments § 16 ...............................................18

**INTRODUCTION**

Smiths asserts that Judge Shelby's decision, invalidating certain claims of U.S. Patents Nos. 7,785,302 (the "'302 patent") and 7,947,022 (the "'022 patent")[1] under 35 U.S.C. § 101 (Ex. 1) requires that this court grant judgment on the pleadings.  But judgments need not be treated as preclusive when they are likely to be reversed and are contrary to other cases.  Reversal is likely here given that Judge Shelby did not follow *C.R. Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372 (Fed. Cir. 2020).[2]  And Judge Shelby admittedly "parted ways" with Judge Nielson who found very similar claims patent eligible.   *C.R. Bard et al. v. Medical Components*, No. 2:17-cv-00754-HCN-DAO, D.I. 754-1 (D. Utah) (Ex. 2).

Also, the claims here are not coextensive with those before Judge Shelby. Claim 9 of the '302 patent and claims 2 and 6 of the '022 patent, asserted here, were not at issue in the Utah case, and thus were not considered by Judge Shelby. Bard also was never afforded any opportunity to litigate claims 5-8 of the '302 patent, asserted here, because Judge Shelby invalidated those claims *sua sponte*.  Thus, this Court would have to independently conclude that clear and convincing evidence established that these claims are invalid.  This would not be a productive use of the

---

[1] As well as Patent No. 7,959,615 (the "'615 patent"), not at issue here.

[2] Judge Shelby himself noted that his decision was in "tension" with *AngioDynamics*.  Ex. 1 at 28 n.138.

1

Court's resources given that the appeal from Judge Shelby's decision will almost certainly provide dispositive guidance for this case.

Smiths' motion should be denied or deferred and the current stay should continue in effect to allow the Federal Circuit to resolve the "tension" between Judge Shelby's determination and the cases with which it conflicts. There is no reason to expend this Court's resources while the issue is being resolved in the Federal Circuit or to create an additional appellate issue based on issue preclusion in addition to the § 101 issues already before the Federal Circuit. *See* Bard's Opening Br. in *C.R. Bard, Inc. v. Medical Components, Inc.,* Appeal No. 2022-1136 (Fed. Cir.) (Ex. 3).

## NATURE AND STAGE OF THE PROCEEDINGS

### A.    Bard's '302 and '022 Patent Infringement Claims

In 2012, Bard sued Smiths, AngioDynamics, and Medical Components in Utah for infringement of its '302 and '022 Patents. *See* D.I. 1. The patents cover power injectable access ports identifiable as such after implantation. These cases were stayed for many years pending *inter partes* reexaminations of Bard's patents. Bard largely prevailed in the reexaminations and then moved to lift the stay. *See C.R. Bard, Inc. v. AngioDynamics, Inc.*, 748 F. App'x. 1009, 1016-17 (Fed. Cir. 2018). After the stay was lifted, two of the cases were transferred to this Court, given the intervening change in venue law.

2

**B.     The Federal Circuit and Judge Nielson Rule That Bard's Patents Are Valid**

Bard currently is litigating six cases, in three courts, involving patents claiming injectable ports with radiopaque identifiers ("Ports I, II, III and IV"). This case is one of three Port I actions.[3]  A second Port I case (AngioDynamics) is before this Court, and one Port I case now is on appeal from the District of Utah (MedComp).  The Port II case was the subject of the *AngioDynamics* decision and is set for trial before Judge Bataillon on May 6, 2022.  Port III is pending against MedComp in Utah.  Port IV, against AngioDynamics, is pending before this Court. C.A. No. 21-349 (CFC).

Judge Shelby's decision is the third in which § 101 has been litigated.  In Port II, Judge Bataillon ruled that Bard's related patent claims were invalid and the Federal Circuit reversed.  *See AngioDynamics*, 979 F.3d at 1384-85.  Applying *Alice* step one, the Federal Circuit held "that the asserted claims are not patent ineligible under § 101 because the claims in their entireties are not solely directed to printed matter."  *Id.* at 1384.   Under *Alice* step two, the Court held that although AngioDynamics had generally shown that "the use of radiographically identifiable markings on implantable medical devices was known in the prior art," AngioDynamics had not presented evidence "that the use of a radiographic marker,

---

[3]   The "Port I cases" are 2:12-cv-00032-RJS-DAO (D. Utah) (now on appeal, No. 2022-1136 (Fed. Cir.)), this case and 20-1544-CFC (D. Del).

in the ordered combination of elements claimed, was not an inventive concept." *Id.* (internal citations omitted).

In the Utah Port III case, Bard asserts patents related to those at issue here. Judge Nielson, there, interpreted *AngioDynamics* to require that Bard's claims are patent eligible under *Alice*. Although addressing different patents than here, Judge Nielson concluded "that the asserted Port ID patent claims are 'materially indistinguishable' from the claims analyzed in *AngioDynamics*." Ex. 2 at 81:12-14. "It follow[ed] that," at *Alice* step one, "none of the Port ID claims asserted here is directed 'solely' to 'the content of the information conveyed' and thus to 'non-functional' and patent-ineligible 'printed matter.'" *Id.* at 81:19-22.

## C.   Judge Shelby Rules That Bard's Patents Are Invalid

Shortly after Judge Nielson's decision, Judge Shelby ruled that several claims from Bard's '302, '022, and '615 Patents were invalid under 35 U.S.C. § 101. Contrary to the Federal Circuit and Judge Nielson, Judge Shelby ruled that Bard's port claims were directed only to patent-ineligible printed matter at *Alice* step one. *See* Ex. 1 at 31-32. Also, contrary to the prior cases, he ruled that Bard's use of a radiopaque marker was not an inventive concept under *Alice* step two. *See id.* at 36. Judge Shelby diverged from the Federal Circuit, asserting he had a different "record" showing that "use of radiopaque identifiers is not an inventive concept unique to Bard's access port technology." *Id.* at 35. But the only real difference in the records

4

is the different patents at issue which, for § 101 purposes, are not distinguishable from those before the Federal Circuit.  Notably, Judge Shelby did not point to any evidence showing that use of radiopaque markers in the "ordered combination" of elements claimed was not inventive.  *Id.* at 37.

Judge Shelby then held a hearing where he acknowledged that his § 101 ruling was "the 800-pound gorilla in the room," that "you may all think I'm crazy and dead wrong about my ruling, and I may be.  I don't know.  I know that I parted ways with one of my colleagues.  I just did the best I could in view of the way I read the circuit's decision and the like.…  My decision last week is the law of the case until it's not."  Ex. 4 at 3:23-4:15.  He then invited Bard to file a motion for summary judgment that MedComp's counterclaim patent claims also claim patent ineligible subject matter in light of his decision on Bard's patents.  *See* D.I. 277, Ex. B at 3-4.

Bard so moved, and Judge Shelby granted the motion.  *Id.* at 4.  Judge Shelby thereafter certified his Orders for appeal under Rule 54(b).  *See* D.I. 277, Ex. C. Bard filed a notice of appeal on November 5, 2021 (*id.*, Ex. D) and that appeal now is pending (Appeal No. 2022-1136 (Fed. Cir.)).

## SUMMARY OF THE ARGUMENT

This Court should deny Smiths' motion.  *First,* Judge Shelby's decision should not be afforded preclusive effect because it irreconcilably conflicts with binding Federal Circuit precedent, as well as a determination made by another

district court judge.  Simply put, this Court cannot be forced to adopt an erroneous decision and thereby commit reversible error.  *Second*, the issues before Judge Shelby are not identical to those here.  Claim 9 of the '302 and claims 2 and 6 of the '022 patent asserted in this action were not asserted or considered in Judge Shelby's case.  Meaningful differences exist between the adjudicated and unadjudicated claims that raise material factual issues.  *Third*, Bard did not have any chance in the Utah case to litigate the validity of each claim asserted here.  Judge Shelby's invalidity determination for claims 12 and 14 of the '022 patent and claims 1, and 3-8 of the '302 patent was done *sua sponte*.

Alternatively, this Court should defer consideration of Smiths' motion to await the ultimate disposition of the current appeal.  There simply is no compelling reason for this Court to expend resources assessing issues that the Federal Circuit will address shortly or to create a second appeal on issues, such as issue preclusion and the validity of unadjudicated claims, that are not already before the Federal Circuit and may never have to be decided.  The current stay should remain in effect pending the outcome of that appeal.

## **ARGUMENT**

## I.    **LEGAL STANDARD**

"Judgment on the pleadings shall only be granted if the moving party clearly establishes that there are no material issues of fact and that the moving party is

entitled to judgment as a matter of law…. [T]he court must view the facts in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party," just as it would on a Rule 12(b)(6) motion to dismiss. *Anderson v. Gen. Motors LLC*, No. 18-621-LPS, 2019 WL 4393177, at *2 (D. Del. Sept. 13, 2019) (internal citations omitted).

"In a patent case in this district, Third Circuit law governs the application of issue preclusion generally, and Federal Circuit law governs those aspects of issue preclusion that may have special or unique application to patent cases." *Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 181 (D. Del. 2019) (internal citations omitted). Issue preclusion applies only if "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Delaware River Port Auth. v. Fraternal Ord. of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002). "As the party asking the court to apply issue preclusion, [Smiths] bears the burden of demonstrating the propriety of its application." *Orexo*, 371 F. Supp. 3d at 181 (internal citations omitted).

## II.   COLLATERAL ESTOPPEL DOES NOT PRECLUDE BARD'S CLAIMS

### A.   Judge Shelby's Decision Should Not Be Considered Preclusive

"There is 'no bright-line rule' [under Third Circuit law] regarding what constitutes a 'final judgment' for issue preclusion." *Free Speech Coalition, Inc. v. Att'y Gen. of the United States*, 677 F.3d 519, 541 (3d Cir. 2012).  Indeed, the Third Circuit has noted that "'[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts,'" and that finality "'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 n.8 (3d Cir.1980)).  In analyzing the finality of a prior determination, courts consider: "whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Free Speech*, 677 F.3d at 541 (quoting *Brown*, 951 F.2d at 569).  Judge Shelby's decision cannot be considered sufficiently final because it conflicts with Federal Circuit precedent, as well as a determination made by a sister court and Bard has appealed that decision.

Judge Shelby did not apply the law announced in *AngioDynamics*.  There, the Court addressed the interplay between the printed matter doctrine and § 101, holding that a patent claim is ineligible when "directed solely to non-functional printed matter and the claim contains no additional inventive concept."  979 F.3d at 1383.

The Court applied that standard to very similar claims to those here—claims requiring "a radiographic marker identifying the claimed port as power injectable." *Id.* at 1375. The Court held that those claims were not directed solely to printed matter because their focus was not just "on the content of the information conveyed, ***but also on the means by which that information is conveyed***." *Id.* at 1384 (emphasis added). Instead of applying that framework, Judge Shelby inexplicably created an idiosyncratic four-step test to evaluate patent eligibility in the printed matter context. He then held, based on that incorrect analysis, that "printed matter includes not only the information being conveyed ***but the matter used to convey the information***." Ex. 1 at 17 (emphasis added).

Judge Shelby's ruling also "parted ways" with Judge Neilson in Port III. Ex. 4 at 3:25-4:2. In *Port III,* Judge Nielson ruled that a related set of Bard's patents, which similarly claimed radiopaque indicia, were directed to patent eligible subject matter. *See* Ex. 2. Judge Neilson found that the asserted claims were "materially indistinguishable" from the claims analyzed in *AngioDynamics*, and thus those claims could not be "directed 'solely' to . . . 'non-functional' and patent-ineligible 'printed matter.'" *Id.* at 81:11-14, 19-24.

Given those contrary rulings, Judge Shelby's determination "falls short of being 'sufficiently firm' for the purpose of issue preclusion." *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 325 (D. Del. 2021). As in *Glen*, other courts addressing

9

the issue ruled on by Judge Shelby "reached the opposite conclusion," and "the inconsistent rulings suggest, at the least, that the issue of whether [the patent claims before this Court are invalid under § 101] is not settled."[4]  *Id.* at 325-26.

The fact that Bard appealed Judge Shelby's determination also weighs against the application of issue preclusion.  *See id.* at 326.  Judge Shelby's decision cannot be squared with controlling precedent.  Although this is not dispositive of finality, it nonetheless is an important consideration because applying issue preclusion in such a context "could 'create later problems.'"  *Id.*  The Court therefore should exercise its discretion to deny application of issue preclusion here.  *See Blonder-Tongue*, 402 U.S. at 334 ("proper rulings on estoppel pleas . . . will necessarily rest on the trial courts' sense of justice and equity."); *see also Glen*, 529 F. Supp. 3d at 326 n.8 ("None of the cited cases supports the proposition that the Court *must* apply issue preclusion to a decision that is on appeal.") (emphasis in original); *see also id.* at 322 ("Under the doctrine of non-mutual issue preclusion, a litigant '*may* [ ] be estopped from advancing a position that he or she has presented and lost in a prior proceeding

---

[4]   Bard also was not afforded a fair opportunity to litigate the patent-eligibility of the claims before this Court.  As the Supreme Court recognized, the question of whether a patentee has had a full and fair chance to litigate the validity of its patent in an earlier case takes into account whether the first court applied the correct legal standards.  *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971).  Judge Shelby failed to apply the correct legal standards articulated in *AngioDynamics*.

against a different adversary.'") (quoting *Peloro v. United States*, 488 F.3d 163, 175

(3d Cir. 2007)) (emphasis added).

Smiths cites *Studiengesellschaft Kohle, mbH v. USX Corp.*, 675 F. Supp. 182

(D. Del. 1987), for the proposition that the collateral estoppel analysis should not

consider whether the judgment of the first court was correct.  *See* D.I. 276 at 9.  But

the statement from that case, and others like it, relates to situations where the first

court applied the proper legal standards and a party simply disagrees with the court's

ultimate conclusion.  *See* 675 F. Supp. at 186.  Here, by contrast, Judge Shelby's

decision betrays a "blatant misunderstanding of the relevant legal principles" or a

decision to disregard them.  *See Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*,

515 F.2d 964, 986 (3d Cir. 1975).

*AngioDynamics* explicitly held that claims are not directed solely to printed

matter where their focus is not just "on the content of the information conveyed, but

also on the means by which that information is conveyed."  979 F.3d at 1384.  The

Court found that the claims at issue there were focused on the means by which the

information was conveyed because "the claimed invention is described in the patents

as satisfying a specific need for easy vascular access during CT imaging, and it is

the radiographic marker in the claimed invention that makes the claimed port

particularly useful for that purpose."  *Id.*  Accordingly, the Federal Circuit concluded

11

that "the asserted claims are not patent ineligible under § 101 because the claims in their entireties are not solely directed to printed matter." *Id.*

Judge Shelby held, however, that "printed matter includes not only the information being conveyed *but the matter used to convey the information*." Ex. 1 at 17. Despite recognizing that, like the *AngioDynamics* claims, the "core of each of the asserted claims" before him was "using *a specific type of identifier* to convey information that a port is capable of power injection," Judge Shelby came to the opposite conclusion from *AngioDynamics* and held that the entirety of the claims before him were directed to printed matter. *Id.* at 27. This evidences a clear misunderstanding of the applicable legal principles and distinguishes this case from those Smiths cites. Smiths simply is wrong that this Court needs to ignore controlling precedent and blindly follow a decision that openly acknowledges it is in "tension" with that precedent.

Smiths also contends that "the law is clear" that a subsequent appeal of a prior court's decision cannot affect the finality of that judgment in a collateral estoppel analysis. D.I. 276 at 8.[5] As noted above, Third Circuit law governs the application

---

[5] *Citing DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999); *Rice v. Dep't of the Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983).

of collateral estoppel.  *See Orexo*, 371 F. Supp. 3d at 181.[6]  In the Third Circuit, whether a judgment has been appealed can inform the issue of finality in the context of a collateral estoppel analysis.  *See Glen*, 529 F.3d at 325-26; *see also Sound View Innovations, LLC v. Walmart Inc.*, No. 19-660-CFC-CJB, 2019 WL 7067056, at *4 (D. Del. Dec. 23, 2019), *report and recommendation adopted*, No. 19-660-CFC/CJB, 2020 WL 136864 (D. Del. Jan. 13, 2020) (finding that the other court's order should not be accorded preclusive effect because "appellate reversal is certainly possible (and presumably more likely as to a Section 101 issue as compared to an issue relating to other, less-constantly-evolving areas of patent law)").

Judge Shelby's decision lacks sufficient finality to be issue preclusive here.

## B.     The Issues Before Judge Shelby Are Not Identical To Those Here

As Smiths acknowledges, claim 9 of the '302 patent and claims 2 and 6 of the '022 patent are asserted in this action, but were not asserted before Judge Shelby. Smiths contends that judgment as a matter of law still is warranted because "the reach of collateral estoppel is not limited to identical patent claims."  D.I. 276 at 12. According to Smiths, where the difference between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel may apply.  *Id.*  That may be a correct statement of law, but the

---

[6]  Federal Circuit law governs only those aspects of collateral estoppel that are unique to patent cases.  *Id.*  The issue of whether a subsequent appeal affects a judgment's finality is not unique to patent law.

current procedural posture requires this Court to view the facts in the pleadings and the inferences drawn therefrom in the light most favorable to Bard. *See Anderson*, 2019 WL 4393177 at *2. In that light, material issues of fact remain over the differences between the adjudicated and unadjudicated claims on the question of validity.

Smiths argues that "with respect to claim 9 of the '302 patent, there is nothing claimed that materially alters the question of invalidity." D.I. 276 at 13. Smiths rests its argument on a comparison of claim 9 to claims 1, 4 and 8 of the '302 patent. *Id.* at 14. Based on purported claim language overlap, Smiths contends claim 9's invalidity was "subsumed" in Judge Shelby's analysis of those other invalidated claims. *Id.* at 13. Under § 282(a), however, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims," and it is Smiths' burden to prove patent invalidity by clear and convincing evidence. Thus, Smiths must "clearly establish[]" that no material issues of fact remain and that it is entitled to judgment as a matter of law that claim 9 is invalid. *See Anderson*, 2019 WL 4393177 at *2 (citation omitted). That there are some similarities between the invalidated claims and claim 9 cannot suffice to establish claim 9's invalidity under § 101.

Smiths never identifies where Judge Shelby's analysis of the asserted claims before him subsumed claim 9's distinct limitations. It cannot do so because Judge

Shelby never addressed whether claim 9's specific radiopaque alphanumeric message is functionally related to the power injectable port, as required to determine whether the alleged printed matter falls outside the scope of patentable subject matter. *See AngioDynamics*, 979 F.3d at 1381-82.

As part of the Federal Circuit's opinion reversing the USPTO's re-examination decisions, it construed the claims of the '302 and '022 patents, specifically, to be structurally limited to power injectable ports. *AngioDynamics*, 748 F. App'x at 1016-17. It follows that, because the only reference to power injectability in the '302 and '022 patent claims is found in the portion of the claims relating to the contents of the message, there is a direct functional relationship between the substrate (a power injectable port) and the message (that the port is power injectable). Judge Shelby never considered that point in his opinion. Thus, to grant Smiths' motion, the Court would have to make the determination in the first instance that there is no functional relationship between a radiopaque alphanumeric message, which includes "C" and "T", and the underlying power-injectable access port. For the reasons recited above, the pleadings, taken in the light most favorable to Bard, do not conclusively support that determination, nor has Smiths satisfied its burden to establish it is entitled to judgment as a matter of law on that question. *See Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) (denying Rule 12(c) motion because "[t]he briefing and

evidence now before the Court are not adequate to permit a definitive answer . . . at this stage" to the question of "whether there is any set of facts that could be proven that would result in the challenged claims being patent-eligible").

Smiths similarly contends that collateral estoppel should apply to unadjudicated claims 2 and 6 of the '022 patent because the validity analyses for both claims allegedly were subsumed in Judge Shelby's determination that claim 1 was invalid under § 101. D.I. 276 at 14-17. But as with claim 9 of the '302 patent, the parties never briefed, ***and the Court did not decide***, how the additional limitations in claims 2 and 6 of the '022 patent may affect the validity of those claims.

This is particularly important with regard to claim 6, which recites "[t]he access port according to claim 1, wherein the at least radiopaque identification feature includes at least one of the following: a symbol, a pattern, a mark, or any combination thereof." D.I. 276 at 16. Smiths asserts that this claim includes "the same claim elements communicating information about an implantable port that [Judge Shelby] found invalid under § 101 and the printed matter doctrine." *Id.* This simply is argument and, regardless, does not resolve the question at *Alice* Step Two. Judge Shelby never analyzed the inventiveness of a specific radiopaque identification feature including one or more alphanumeric characters in addition to "at least one of the following: a symbol, a pattern, a mark, or any combination

thereof," as recited in claim 6.  The Court would therefore have to conduct that analysis in the first instance, and the current record plainly does not establish that claim 6's specific radiopaque feature was routine and conventional.

These unaddressed, unresolved issues preclude application of collateral estoppel to those claims asserted against Smiths that were not asserted in the Utah case.

### C.    Bard Did Not Have a Full and Fair Chance to Litigate the Validity of the Claims Asserted Here

Smiths contends that "collateral estoppel indisputably applies to claims 5-8 of the '302 patent and claims 1, 8 and 9 of the '022 patent," because Judge Shelby invalidated those claims.  D.I. 276 at 11.  But Smiths ignores that Judge Shelby's invalidity determination for claims 12 and 14 of the '022 patent, and claims 1, and 3-8 of the '302 patent was done *sua sponte*, meaning that Bard was not afforded any opportunity to litigate the validity of those claims.

MedComp moved for summary judgment of invalidity on only claims 1, 3, 5, and 8-10 of the '022 patent and claim 10 of the '302 patent.  *See* Ex. 5 at 10.  It argued that the printed matter doctrine applied to the terms "identification feature" and "markings" in those claims.  *Id.*  Accordingly, Bard's opposition was limited to rebutting MedComp's specific arguments regarding those claims and claim terms. Judge Shelby, however, found all of the asserted claims of Bard's patent invalid without affording Bard an opportunity to litigate the validity of each of the asserted

17

claims he invalidated and, in particular, Bard did not have the chance to litigate claims 5-8 of the '302 patent, also asserted here.[7]

Smiths' does not explain how, despite the limited focus of MedComp's summary judgment motion, Bard had the opportunity and incentive to litigate the validity of different claims with distinct limitations.  Collateral estoppel should not apply to the claims never raised in MedComp's motion before Judge Shelby.

## III.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY CONSIDERATION OF SMITHS' MOTION

Bard already has appealed Judge Shelby's decision and filed its opening brief. *See* Ex. 3.  This Court should "stay its own proceedings to await the ultimate disposition of the judgment on appeal." *Martin v. Malhoyt*, 830 F.2d 237, 265 (D.C. Cir. 1987) (quoting *In re PATCO*, 699 F.2d 539, 544 n.18 (D.C. Cir. 1983); *see also, e.g.*, Restatement (Second) of Judgments § 16 cmt. b (1982); Restatement (Second) of Conflict of Laws § 107 cmt. e (1971); *Sound View*, 2019 WL 7067056 at *4.

Smiths' contrary arguments are meritless.   *First*, it claims that dismissal "would enable [it] to participate in the appeal" of the" Partial Summary Judgment Order.  D.I. 276 at 5.  Not so.  The only issues in such an appeal will be issue

---

[7]  Judge Shelby expressly recognized that Bard was not afforded an opportunity to brief the question of patent eligibility of all the asserted claims.  *See* D.I. 715 at 23 ("the parties have not briefed the question of printed matter in all the asserted claims.").  This failed to comply with Rule 56.  *See* Fed. R. Civ. P. 56(f) (noting that granting summary judgment on grounds not raised by a party is appropriate only after "giving notice and a reasonable opportunity to respond").

preclusion because that is the sole basis for Smiths' motion.  Smiths could of course comment on the merits of the validity issues, but it could also do so in as amicus curiae.   Dismissal has no effect.

*Second*, Smiths says that dismissal will preserve this Court's resources.  *See id.* at 19-20.  But staying these claims is the most efficient way to conserve the Court's resources.  Otherwise, this Court will have to decide whether claim 9 of the '302 patent, and claims 2 and 6 of the '022 patent, are invalid under § 101.  That issue will almost certainly be resolved by the Federal Circuit's decision.

Finally, Smiths' cited cases (D.I. 276 at 19-21) dismissing actions based on collateral estoppel, rather than staying consideration of the motions, are inapt. Unlike the prevailing party in each of those cases, Smiths seeks to enforce an order that contradicts a Federal Circuit opinion on the same issue and another district court judge's interpretation of that opinion.[8]  The equities here thus weigh very differently.

---

[8]   *Compare DietGoal*, 70 F. Supp. 3d at 815 ("criticism of the district court's [decision] . . . is simply a disagreement with the district court's analysis."); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1337 (Fed. Cir. 2017) (considering only whether application of collateral estoppel was warranted when based on a grant of *partial* summary judgment); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 WL 174305, at *2 (S.D.N.Y. Jan. 13, 2020) ("Plaintiff does not dispute that its claims . . . are now collaterally estopped."); *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 611 (E.D. Pa. 2018) (finding no legal error in prior court's order); *Endo Pharms., Inc. v. Impax Lab'ys, Inc.*, No. CV 16-2526 (JLL), 2016 WL 6246773, at *6 (D.N.J. Oct. 25, 2016) ("Plaintiff concedes that the Prior DE Action involved an issue that is identical to a defense that will be asserted in this action"); *Galderma Lab'ys Inc. v. Amneal Pharms., LLC*, 921 F. Supp. 2d

## **CONCLUSION**

This Court should deny or defer ruling on Smiths' motion and continue the stay of this case.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

OF COUNSEL:

Steven C. Cherny
Matthew A. Traupman
Brian P. Biddinger
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

December 14, 2021

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227))
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiffs C.R. Bard, Inc.*
*and Bard Peripheral Vascular, Inc.*

---

278, 280 (D. Del. 2012) (Galderma did not challenge that the prior court issued a valid judgment or that it had the opportunity to litigate the relevant issue); *Convergence Corp. v. Videomedia*, 539 F. Supp. 760, 763 (N.D. Cal. 1981) ("plaintiff has not presented any evidence suggesting that a genuine issue of fact exists concerning its opportunity to litigat[e] the issue.")

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 4,962 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 14, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Kenneth L. Dorsney, Esquire | *VIA ELECTRONIC MAIL* |
| Cortland S. Hitch, Esquire | |
| MORRIS JAMES LLP | |
| 500 Delaware Avenue, Suite 1500 | |
| Wilmington, DE  19801-1494 | |
| *Attorneys for Defendant Smiths* | |
| *Medical ASD, Inc.* | |
| | |
| Jeffrey N. Costakos, Esquire | *VIA ELECTRONIC MAIL* |
| R. Jan Pirozzolo-Mellowes, Esquire | |
| Michelle A. Moran, Esquire | |
| Jack T. Carroll, Esquire | |
| FOLEY & LARDNER LLP | |
| 777 East Wisconsin Avenue | |
| Milwaukee, WI  53202-5306 | |
| *Attorneys for Defendant Smiths* | |
| *Medical ASD, Inc.* | |

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)